[Civ. No. 26235. Second Dist., Div. Three. June 19, 1963.]

CARL BEDFORD, Plaintiff and Appellant, v. NICK BOSKO et al., Defendants and Respondents.

Clifton D. Klahs for Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett, Roger Roberts and Gary W. Sawtelle for Defendants and Respondents.

FILES, J.—Plaintiff is appealing from a judgment of nonsuit in his action for damages for personal injuries sustained while driving his automobile on the Hollywood Freeway. Defendants are members of a joint venture who were operating a large truck on the same freeway.

It is necessary here to review the evidence in the light of the familiar rule that a nonsuit may be affirmed on appeal only when there is no substantial evidence to support a judgment for plaintiff, indulging in every legitimate inference which may be drawn in plaintiff's favor from that evidence. (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768].)

Plaintiff testified that about 9:30 a.m. on July 6, 1956, he was driving inbound on the Hollywood Freeway. Near the Barham Boulevard overcrossing, he observed defendants' truck standing in the right-hand lane. Another truck was ahead of defendants' truck and there was a chain between them. As plaintiff came abreast of the chain, he saw it break. He heard a noise and saw his windshield glass shatter in front of his face and felt a pain in his left eye. He stopped his car, but police officers who were directing traffic around the two trucks ordered him to move on. Subsequent inspection of plaintiff's windshield showed that some chips of glass were missing from its inner surface. There was evidence that the injury to plaintiff's left eye was serious, but the nature and extent of the injury are not material on this appeal.

Defendants' driver, called as a witness by plaintiff, described defendants' vehicle as a two-axle truck pulling a two- or three-axle low-bed trailer. It was loaded with 2-inch water pipe, the load being 3 to 4 feet high and 6 or 7 feet wide. The driver had no idea as to the weight of the truck and its load.

As the truck approached the Barham overcrossing from the north its power failed, and it came to a stop on the upgrade about 100 or 200 feet south of the crossing. At the time the driver did not know the cause of the failure. He later learned that "The sleeves went out of the engine and the engine froze up." He first put blocks behind the wheels to prevent the vehicle from rolling backward. Then he hailed a passing truck and asked for a tow. The other driver agreed. Defendants' driver then took a chain which was used to hold the load and connected it between the two trucks. The links

of this chain were described as having an inside diameter of about a half-inch and an outside diameter of an inch to an inch and a quarter. Defendants' driver inspected this chain and it "looked good." When the front truck attempted to tow, the chain snapped approximately in the middle.

The driver of the other truck then offered his chain, which he said was bigger. Again when the tow was attempted the chain snapped. The other driver then picked up the pieces of his chain and drove away. Up to this time the police had not arrived at the scene.

Shortly afterward police officers did arrive and asked defendants' driver how they could contact his employer. He said he did not know. He had no instructions as to what to do in case of a breakdown. At this time the traffic was heavy and was backing up behind the stalled truck. The police offered to stop a truck and request a tow. Defendants' driver agreed to this. The officers then stopped a truck whose driver agreed to help. This driver took a chain off his load and connected it between the two trucks. Defendants' driver did not assist in this, nor did he inspect the chain. He remained 15 or 20 feet away from the chain. However, he gave his consent to have the other truck attempt the tow. After the chain was connected, the trucks were 6 to 8 feet apart. Defendants' driver then climbed into his cab and the tow was attempted. This third chain also broke about the middle. All of this time, heavy traffic was passing by in the adjacent lane.

Eventually, by the combined effort of one truck pulling and another pushing, defendants' vehicle was brought to the top of the grade, from which it coasted to a safe parking place. The towing truck then went on its way. Its driver was never identified. None of the three chains was produced at the trial. There is no way to determine from the evidence whether the chain broke because it was unsuitable or because the drivers, one or both, subjected it to unnecessary stress.

From the combination of circumstances the jury could reasonably have inferred that when the third chain broke, a fragment struck plaintiff's windshield, causing a glass chip or sliver to pierce plaintiff's eye. Granted that a flying object of some other origin might have caused the damage, it was for the jury to say whether it was not reasonably probable that the blow which was simultaneous with the breaking of the chain was the result of that break. (Cf. *Fallo* v. *New York, New Haven & Hartford R. Co.*, 123 Conn. 81 [192 A. 712].)

From the fact that the chain broke the jury could also have inferred that someone had failed to use due care. (Cf. *Weddle* v. *Loges,* 52 Cal.App.2d 115, 124 [125 P.2d 914]; *Duran* v. *Yellow Aster Min. etc. Co.,* 40 Cal.App. 633 [181 P. 395]; *Koskela* v. *Albion Lumber Co.,* 25 Cal.App. 12, 22 [142 P. 851].) A chain is used in pulling a heavy object because chains are especially designed to withstand tension. It is a matter of common knowledge that if the chain is strong enough and is properly used, it will not ordinarily break.

Common experience also teaches that when a chain breaks under tension, the ends are likely to whip and fragments of a broken link may fly, thereby endangering anyone in the immediate vicinity. The greater the force applied to the chain, the more violent is the reaction if a link breaks. The amount of force which must be applied to a chain in order to move a truck and trailer loaded with steel pipe on an upgrade is considerable. It may reasonably be inferred that a prudent person, having due regard for the safety of passers-by, would not attempt such an operation without taking some precautions which were not shown to have been taken in this instance.

There is no contention that plaintiff was at fault. In the pretrial order contributory negligence was not made an issue.

Defendants contend that even if it be inferred that someone was negligent, there is no evidence that defendants or their driver were negligent, or that they were in control of the instrumentality which caused the injury. This view of the evidence overlooks some inferences which could reasonably be drawn as to the participation and responsibility of defendants.

It was the business of defendants to conduct their loaded truck along the Hollywood Freeway to its destination. When the engine failed, it was the business of defendants to restart the truck if possible, or at least to move it off the freeway. Although it appears that the driver had no specific instructions for dealing with this unexpected problem, the jury could infer that he had authority to do something other than leave his vehicle and its cargo on the freeway for the rest of the day.

A jury could reasonably infer that defendants' driver had authority to try to move his stalled vehicle off the freeway, and that the acts of the man who helped him were the acts of defendants' driver, and through him the acts of defendants. In *Gates* v. *Daley,* 54 Cal.App. 654 [202 P. 467], a truck driver on a long trip became fatigued and allowed his

wife to drive. She drove negligently, causing an accident. The court affirmed a judgment against the husband's employer upon the ground that she was driving under the direction of the regular driver, and that her negligence was therefore imputed through him to his employer. In *Hollidge* v. *Duncan*, 199 Mass. 121 [85 N.E. 186], the driver of a dump cart which was out of order called upon a bystander for assistance. The bystander caused an injury. The court concluded that "the act of the bystander must be regarded as the act of the driver," and affirmed a judgment against the driver's master. (Accord: *Cain* v. *Bowlby* (10th Cir. 1940) 114 F.2d 519, 523; *Whiteside* v. *Harvey*, 124 Colo. 561 [239 P.2d 989, 991].)

 Furthermore, it is not unreasonable to infer that defendants' driver had authority to enlist the help of another trucker, so as to make the latter a servant of defendants. Restatement Second of Agency, section 79, states:

"Unless otherwise agreed, an agent is authorized to appoint another agent for the principal if: . . .

"(d) an unforeseen contingency arises making it impracticable to communicate with the principal and making such an appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent."

Cases permitting recovery against the master where his employee required emergency assistance in the operation of a motor vehicle are *Kirk* v. *Showell, Fryer & Co.*, 276 Pa. 587 [120 A. 670]; *McGhee* v. *Kingman & Everett*, 49 Ga. App. 767 [176 S.E. 55]; *Barrier* v. *Thomas & Howard Co.*, 205 N.C. 425 [171 S.E. 626]; but cf. *Newman* v. *Steuernagel*, 132 Cal.App. 417 at p. 425 [22 P.2d 780], distinguishing the *Kirk* case upon the ground that the evidence showed no such emergency as would justify application of the rule.

Upon the evidence here, where the truck was loaded with materials en route to a construction job, and where it was stalled so as to block one lane in a busy freeway, the defendants having given no specific instructions, and having given the driver no means of communicating, the jury might infer that the defendants had intended that their driver obtain help from a passing vehicle.

 If it be assumed, as suggested by the argument of defendants, that their driver had nothing to do with the towing operation because he had turned it over entirely to the driver of the other truck, then liability could be imposed upon another principle.

The Restatement Second of Agency, in section 241, states the following rule:

"A master who has entrusted a servant with an instrumentality is subject to liability for harm caused by its negligent management by one to whom the servant entrusts its custody to do the work the servant was employed to perform, if the servant should realize that there is an undue risk that such person will harm others by its management."

Comment (c) under section 241 is as follows:

"*Liability only where transfer is negligent.* Under the rule stated in this Section, in the absence of authority in the servant to delegate to another control over the instrumentality, the master is liable only if the servant, at the time he surrenders custody, has reason to believe that the change of custody is likely to result in harm to others. Such likelihood may exist because of the known incompetence or recklessness of the person to whom custody is given or, in the case of an instrumentality likely to do harm if not carefully managed, because the servant does not know of the qualities of such person. . . ."

In this case defendants' driver knew nothing of the competence or prudence of the driver who was asked to assist. Defendants' driver knew nothing about the chain which was offered, nor did he make any effort to find out by inquiry or inspection. If it be assumed (as the jury might) that the breaking of a tow chain under the tension developed by these two trucks would be likely to result in harm to others, then defendants' driver could be found to have been negligent in surrendering control without regard for the consequences. The fact that two chains had been broken already served only to illustrate the obvious.

Defendants have argued that they should be excused because their driver acted under the direction of the police. However, the record fails to show that the police gave any orders to either truck driver. The record does not compel the inference that defendants' driver or defendants' truck ever came under the control of anyone else.

It should be noted also that this case is not comparable to the situation where the operator of a disabled vehicle engages a professional towman who, as an independent contractor, assumes full charge of its removal from the highway.

There being evidence from which the jury could reasonably have inferred that defendants were negligent and that such

negligence proximately caused the injury to plaintiff's eye, the court should not have granted a nonsuit.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.