[Civ. No. 11382.   First Dist., Div. One.   May 15, 1942.]

HUGH WEDDLE, Appellant, v. F. E. LOGES et al., Respondents.

C. M. Walter, Georgia C. Montgomery and Elson L. Jones for Appellant.

Hoge, Pelton & Gunther, Hoey, Hamilton & Turner and A. Dal Thomson for Respondents.

WARD, J.—An appeal by plaintiff from an order granting a new trial and from a subsequent order wherein the first order was "corrected, altered and amended." The submission of this cause was set aside to permit further argument on designated questions and it was agreed that an additional transcript should be filed. Further briefs also were filed pertaining to questions raised by the additional transcript, and it has been stipulated that the brief filed by defendant Loges shall for all purposes of the appeal be considered as the brief of defendant Starr.

In an action for personal injuries against defendants Loges and Starr, a jury returned a verdict as follows: "We, the Jury in this case, find for Plaintiff and assess his damages against the defendants F. E. Loges and Delbert Starr, in the sum of $5,000. Defendant Loges assessed $4,250.00. Defendant Starr assessed $750.00." No request was made by any of the parties to the action to have the jury correct or amend its verdict, and judgment, quoting the verdict, was entered thereon, ordering, adjudging and decreeing "that said Plaintiff Hugh Weddle do have and recover of and from said defendants F. E. Loges and Delbert Starr the sum of $5,-000.00, together with all his said plaintiff's costs" etc. Each defendant separately moved for a new trial on all of the statutory grounds. The court ruled upon each motion and on November 28, 1939, signed an order granting a new trial on all of the issues involved in the cause, including the insufficiency of the evidence. On the following day, there was filed a "Memorandum and Corrected Order Granting Motion for a New Trial," which incorporated the order of the previous day and read in part as follows: "In the ordinary case this order [the first] might have been entirely proper but for the foregoing reasons I now feel that the specific and exact ground for my granting a new trial in this case should be set forth. IT IS ACCORDINGLY THE ORDER AND JUDGMENT OF THIS COURT that the verdict of the jury and the judgment entered therein in the above entitled case be and the same are hereby vacated and set aside and a new trial is hereby granted because the jury in returning its

verdict added to the regular form of verdict as submitted by the Court these words: 'defendant Loges assessed $4250.00. Defendant Starr assessed $750.00.' IT IS FURTHER ORDERED AND DECREED that said order of November 28, 1939, be and it is hereby corrected, altered and amended accordingly.''

Plaintiff appealed ''from that certain Order of November 28, 1939, and from said Order as corrected, altered and amended by that certain Order of November 29, 1939, vacating the verdict of the Jury and the Judgment entered in the above entitled cause and granting a new trial in said action.'' The validity or force of an order correcting, altering or amending a previous order depends upon the specific language of the two orders. The second purported order herein recited that the first was an inadvertence and mistake and contrary to the intention of the court as relates to the reasons for the granting of a new trial; that it was solely the defective form of the verdict upon which the judgment was entered that caused the court to grant a new trial.

■ That the verdict is not in proper form may be readily acknowledged. The liability of joint tort feasors for compensatory damages, as distinguished from punitive damages, cannot be segregated (*Thomson* v. *Catalina*, 205 Cal. 402 [271 Pac. 198, 62 A. L. R. 235]; *Oldham* v. *Aetna Ins. Co.*, 17 Cal. App. (2d) 144 [61 P. (2d) 503]), though recovery may be limited by statutory provision. (*Phipps* v. *Superior Court*, 32 Cal. App. (2d) 371 [89 P. (2d) 698].) ■ The form of a verdict is important in ascertaining whether a proper judgment may be entered thereon. In the present case the members of the jury made it certain and definite that upon the issues presented they found for the plaintiff, fixing damages to which he was entitled in the sum of $5,000; their effort to assess a greater amount against one defendant than another may be treated as mere surplusage. Though it may not be true as to all verdicts, the one in the instant case in favor of plaintiff and against two joint tort feasors in different amounts is not incomprehensible. (*Hallinan* v. *Prindle*, 220 Cal. 46 [29 P. (2d) 202].) ■ While it is true that in some other jurisdictions a stricter rule is followed (*Rathbone* v. *Detroit United Ry.*, 187 Mich. 586 [154 N. W. 143]; *Mooney* v. *McCarthy*, 107 Vt. 425 [181 Atl. 117]), in California the rule is that reasonable inferences may be drawn which will support rather than defeat a judgment. (*Snodgrass* v. *Hand*,

220 Cal. 446 [31 P. (2d) 198] ; *Ochoa* v. *McCush,* 213 Cal. 426 [2 P. (2d) 357].) The reasonable inference in this case is that the jury intended the plaintiff should receive $5,000. Who was to pay the damages assessed was of no concern to the jury. The judgment for the $5,000 was properly entered. In granting a new trial upon the ground of the jury's abortive attempt to apportion the damages, the trial court was in error. (*Brown* v. *Regan,* 10 Cal. (2d) 519 [75 P. (2d) 1063] ; *Curtis* v. *San Pedro Transp. Co.,* 10 Cal. App. (2d) 547 [52 P. (2d) 528] ; *Milburn* v. *Foster,* 8 Cal. App. (2d) 478 [47 P. (2d) 1106] ; *Rogers* v. *Foppiano,* 23 Cal. App. (2d) 87 [72 P. (2d) 239] ; *Phipps* v. *Superior Court, supra.*)

Under either order, assuming as we have the impropriety of granting a new trial upon the ground that the form of a verdict is invalid, the defendants on appeal have a right to rely upon other possible grounds of alleged errors of law. (*Kauffman* v. *Maier,* 94 Cal. 269 [29 Pac. 481, 18 L. R. A. 124] ; *River Farms Co.* v. *Superior Court,* 131 Cal. App. 365 [21 P. (2d) 643] ; *Condon* v. *Ansaldi,* 203 Cal. 180 [263 Pac. 198] ; *Gordon* v. *Roberts,* 162 Cal. 506 [123 Pac. 288] ; *White* v. *Merrill,* 82 Cal. 14 [22 Pac. 1129] ; *Gray* v. *Robinson,* 33 Cal. App. (2d) 177 [91 P. (2d) 194] ; *People* v. *Simpson,* 134 Cal. App. 646 [25 P. (2d) 1008] ; *Vertson* v. *City of Los Angeles,* 116 Cal. App. 114 [2 P. (2d) 411] ; *Charles Lomori & Son* v. *Glove Laboratories,* 35 Cal. App. (2d) 248 [95 P. (2d) 173] ; *Cahill* v. *E. B. & A. L. Stone Co.,* 167 Cal. 126 [138 Pac. 712] ; *Mercantile Trust Co.* v. *Sunset etc. Co.,* 176 Cal. 451 [168 Pac. 1033] ; *Phillips* v. *Powell,* 210 Cal. 39 [290 Pac. 441].)

An appellant, on appeal from an order granting a new trial, must furnish the judgment roll and bill of exceptions, or a typewritten transcript. (Code Civil Procedure, §§ 952, 953a.) On appeal, the presumption is that the order is valid. In other words, it could be assumed that the order granting a new trial was valid in the absence of a record indicating the contrary. If the requisite papers are not furnished, the penalty falls upon the party at fault and the appeal may be dismissed. (Code Civ. Proc., § 954; 2 Cal. Jur., 761, § 443.) In this case, to obviate the possibility of such action it was suggested by the court, and stipulated by the parties hereto, that the complete transcript should be filed.

A consideration of the additional points raised by defendants on motion for a new trial necessitates a recital of the

facts of the case. Plaintiff was an employee of his brother-in-law Loges in a cleaning plant, with his hours of work from Monday to Saturday inclusive. On a Saturday, he was asked by Loges to assist the following day in removing the closed-in body from a Chevrolet truck belonging to the latter, and in substituting another body. On Sunday morning, Loges and Starr, the latter also a brother-in-law of both Loges and plaintiff, and regularly employed as an automobile mechanic, had gone to Loges' cleaning establishment for the purpose of commencing the work. They found there was no place to put the removed body so decided to take the car to Starr's premises. Another employee of Loges helped roll the Chevrolet into the street and offered to go after Weddle who had not yet arrived. Starr, with a towrope regularly carried by him for such purpose, coupled the Chevrolet to his Ford. The length of the rope so joining the cars was from 12 to 18 feet. The battery had been removed from the Chevrolet, and while it could be steered it could not be otherwise operated, nor could the horn be sounded. The brakes remained in their usual condition. The floor had been taken out and there was nothing left for the accommodation of passengers except a single seat for the driver and an uncovered tool box, directly behind the driver's seat, extending nearly all the way across the car. Starr drove his own car, and Loges steered the towed Chevrolet. In the meantime, Weddle and the employee who had gone after him, finding that Loges and Starr had left the cleaning plant, overtook them on the way to Starr's premises. Weddle stepped upon the running board of the Chevrolet and, at Loges' invitation, got into the car. He claims he took a seat on a loose board, about a foot wide, extending across the car in back of the tool box; that he crouched ''down on my feet and leaned up against the side of the car.''

It is plaintiff's claim that as they were thus being towed, Loges offered him a drink and that it was while the latter was driving with one hand and fumbling in the tool box with the other for a bottle of whisky, which he had purchased earlier in the day, that the accident occurred. He makes no claim of excessive speed, stating in this regard that they were traveling on the level at about 10 or 15 miles an hour at the time of the accident; that just prior thereto he felt a slight jerk and was thrown toward the front of the car and into ''the gear shift and machinery'' by reason of the absence of the car's flooring.

There was testimony that just prior to the accident the cars came down a slight grade, Starr feeling no pull of the Chevrolet at this time; that when they were again on the level, Starr increased his speed to about 20 miles an hour; the towrope suddenly tightened; there was a jerk and the Chevrolet jumped the curb and collided with a tree.

Loges claims that he handed the bottle of whisky to plaintiff while they were still about two and a half blocks from the place of the accident. He testified that when Weddle arrived the cars were momentarily slowed down, and that at such time the slackened towrope became fouled with the steering mechanism of the Chevrolet. While he testified that he had no certain knowledge of this condition until Starr suddenly increased his speed as above stated, and the car swerved and jerked out of his hands, there was further testimony that he "thought back at the service station" that such was the case.

Respondents concede that inasmuch as insufficiency of the evidence was not specified in the final order as a ground for granting a new trial, the order is not sustainable by a mere showing of conflict in the evidence; but they contend that the evidence is insufficient as a matter of law to support the verdict. In this regard they argue: (1) that it was established that plaintiff was a guest and not a passenger, and that there was an entire absence of evidence showing intoxication and wilful misconduct; (2) that it failed to show any negligence on the part of the defendants; and (3) that it established that plaintiff was guilty of contributory negligence. We are satisfied that the evidence is legally sufficient to support the implied findings of the jury on the second and third issues above mentioned. ▮ Regarding the first issue, it appears that the jury was instructed as to the law by which it was to be governed in determining from the facts whether the plaintiff was riding as a guest or as one giving compensation for the ride; and it is our opinion that under the law as laid down in *McCann* v. *Hoffman*, 9 Cal. (2d) 279 [70 P. (2d) 909], the facts are such as will support the conclusion that plaintiff's status was not that of a guest, and that being so it was not essential for plaintiff to establish intoxication or wilful misconduct on the part of either of the defendants. This leaves as the possible basis for the order granting a new trial, "prejudicial misconduct in repeatedly asking questions upon a wholly immaterial subject," and errors in instructions.

▮ In respect to misconduct, defendant Loges was asked:

". . . did you know that Starr was a reckless driver?" It was vital to know whether Loges had secured a careful driver to tow the Chevrolet car. The error, if any, was not in asking the above question, but in reframing it, after objections and arguments, in a form to indicate that Starr had been "charged and convicted of driving while intoxicated." The question was improper; the defendants' attorneys interposed a sufficient objection, and the trial court indicated its view on the inadmissibility of such testimony, but there the matter was dropped, subject to further argument "in the absence of the jury." The record does not disclose that the question, or defendants' assignment of misconduct, was further pressed, nor does it appear from the "Memorandum and Corrected Order" that the point was urged on the motion for a new trial. Under the circumstances, while condemning the question, but admitting that Loges' knowledge of Starr's reputation as a driver was relevant to the issues involved, we are unable to hold that the incident resulted in a miscarriage of justice.

The trial court instructed the jury in the exact language of Vehicle Code sections 671 and 701, i. e., "Every motor vehicle when operated upon a highway shall be equipped with a horn in good order and capable of emitting sound audible under normal conditions from a distance of not less than two hundred feet." (a) "When one vehicle is towing another the drawbar or other connection shall not exceed fifteen feet from one vehicle to the other. (b) When one vehicle is towing another, there shall be an additional connection between said vehicles sufficient to hold the vehicle being towed in the event the drawbar or other regular connection should break or become disconnected. (c) When one vehicle is towing another and the connection consists of a chain, rope or cable, there shall be displayed upon such connection a red flag or cloth not less than twelve inches square. (d) The foregoing provisions of this section shall not apply to the drawbar or other connection between a motor vehicle and a pole or pipe dolly or to any lawful trailer used as a pole or pipe dolly. (e) No person shall operate a train of vehicles when any trailer, semitrailer or other vehicle being towed whips or swerves from side to side dangerously or unreasonably or fails to follow substantially in the path of the towing vehicle." ▮ Whether the use of a horn under the conditions obtaining herein would have avoided the accident; whether

the towed car dangerously swerved from side to side or failed to follow substantially in the path of the towing vehicle; whether an additional connection between the cars would have prevented the accident, and whether a red flag would have been of assistance to the driver of the Chevrolet in determining the tautness or looseness of the towing rope are questions of fact. If any of those conditions appeared from the evidence it was proper to instruct the jury upon the law relative to the proximate cause of the accident. The court instructed: "I instruct you that any violation of a motor vehicle law, ordinance, or code upon the part of any party is not material unless such violation of such ordinance proximately contributed to the accident or injury alleged."

As stated, the accident occurred as the result of an impact between the towed car and a tree. ■ It is not negligence *per se* to tow one vehicle by means of another. (*Steinberger* v. *California Electric Garage Co.*, 176 Cal. 386 [168 Pac. 570]), but the towing must be done with due consideration for the safety of others. The evidence shows that the towrope broke, of which the exact cause was a matter the defendants were in a better position to explain than plaintiff. There was some evidence that the towrope had become fouled with the steering mechanism of the Chevrolet; that its length was greater than is legally permitted; that just prior to the accident defendant Loges was engaged in reaching for the bottle of whisky, and that plaintiff was sitting on his "haunches," not looking in the direction "the way the car was going." ■ But the operation of the two cars being under the exclusive direction and management of defendant Loges and his agent or employee Starr, and the accident being one which would not in the ordinary course of things occur if those having the management and control of the instrumentality use proper care, and with the plaintiff unable to explain the cause of the swerve of the car into the tree, or the reason for the breaking of the rope, the doctrine of *res ipsa loquitur* was applicable.

It has been held that the doctrine of *res ipsa loquitur* may not be invoked where there is a divided responsibility and the negligence is in part that of a third party over whom the defendant has no control. (*Speidel* v. *Lacer*, 2 Cal. App. (2d) 528 [38 P. (2d) 477].) In the Speidel case the divided responsibility was of defendant, an independent contractor, and plaintiff's employer; the control of the mechanical device

not resting with defendant. In the present case the evidence tends to show relationship of principal and agent between Loges and Starr. The court did not, as respondents contend, instruct the jury that the evidence was sufficient to establish that Starr was the agent of Loges. The jury was instructed that if agency was established an inference might be drawn that the automobile was operated within the scope of such agency.

If specific findings had been submitted, the jury could have found that defendant Starr was solely responsible for the accident; that Loges was solely responsible therefor; that Starr, as the agent or employee of Loges, was negligent; that the accident was caused by the concurring negligence of Loges and Starr as employer and employee. The trial court was justified in submitting a *res ipsa loquitur* instruction upon the last three theories. (*Formosa* v. *Yellow Cab Co.*, 31 Cal. App. (2d) 77 [87 P. (2d) 716]; *Hyman* v. *Market Street Ry. Co.*, 41 Cal. App. (2d) 647 [107 P. (2d) 485].)

Respondents contend that if appellant maintains that his employment in the cleaning establishment obligated him to assist in the work on the Chevrolet, the Industrial Accident Commission would have sole jurisdiction of the cause of action against Loges. (*Freire* v. *Matson Navigation Co.*, 19 Cal. (2d) 8 [118 P. (2d) 809].) There is testimony that on the day in question Weddle was not working as an employee of the cleaning establishment but had agreed to assist in work on the automobile and expected compensation in the form of "a favor." This indicates that he intended, and Loges expected, that Weddle would fulfill "the object of the journey." (*McCann* v. *Hoffman, supra; Haney* v. *Takakura*, 2 Cal. App. (2d) 1 [37 P. (2d) 170]; *Lerma* v. *Flores*, 16 Cal. App. (2d) 128 [60 P. (2d) 128, 546]; *Druzanich* v. *Criley*, 19 Cal. (2d) 439 [122 P. (2d) 53].)

The orders vacating and setting aside the judgment and granting a new trial are and each of them is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied June 13, 1942, and respondent F. E. Loges' petition for a hearing by the Supreme Court was denied July 13, 1942. Edmonds, J., voted for a hearing.