[Civ. No. 20824.   First Dist., Div. Two.   Apr. 18, 1963.]

FLORIAN DAUENHAUER et al., Plaintiffs and Appellants, v. CARL SULLIVAN et al., Defendants and Respondents.

Hitchcock & Coulter and L. G. Hitchcock for Plaintiffs and Appellants.

Partridge, O'Connell, Partridge & Fall and George Brunn for Defendants and Respondents.

SHOEMAKER, J.—Plaintiffs Florian and Edith Dauenhauer brought this action against defendants Carl Sullivan, Arthur B. Siri, Inc., James Caples, and Peter Onsrud, to recover for damage to their property resulting from earth movements allegedly caused by the negligent excavation of dirt from property owned by defendants Sullivan and Onsrud. Plaintiffs prosecute this appeal from a verdict and judgment awarding them damages in the total amount of $37,000, but undertaking to assess these damages severally and in varying amounts against each defendant. Appellants' sole contention is that the evidence was such as to require the trier of fact to render a joint and several judgment holding each of the defendants liable for the entire amount of plaintiffs' damages.

The record shows that defendants Onsrud and Sullivan were the owners of real property located on a hillside adjacent to

plaintiffs' property. In 1949, Sullivan began selling soil from his property, and he estimated that in the years 1949 and 1950, approximately 120,000 cubic yards of soil were removed. Subsequently, in the period from 1951-1955, Onsrud and others not named as defendants were allowed to remove an additional 15,000 yards. The final excavations authorized by Sullivan occurred in the years 1955 and 1956, when defendant Arthur B. Siri, Inc., removed approximately 18,256 yards. In addition to these excavations on the Sullivan property, defendant Onsrud removed approximately 20,000 cubic yards of soil from his own property in 1954.

In September 1957, as a direct result of the negligent manner in which each of the defendants had undertaken to remove soil from the hillside, plaintiffs' soil began to shift and their house began to crack and split apart.[1] Florian Dauenhauer testified that the house and property had declined in value from $45,000 to $5,000 as a result of the earth movements commencing in 1957.

The jury returned a verdict for plaintiffs assessing their damages in the stated amount of $37,000, and then proceeded to allot these damages in specific amounts, as follows: Carl Sullivan, $15,000; Arthur B. Siri, Inc., $8,000; James Caples, $6,000; and Peter Onsrud, $8,000. Prior to entry of judgment pursuant to this verdict, plaintiffs moved that judgment be entered jointly and severally against all four defendants in the amount of $37,000. The court denied this motion and entered a several judgment in accordance with the verdict. Plaintiffs appeal therefrom.

Admittedly, appellants made no objection to the form of the verdict at the time it was returned ·and read on January 26, 1962, and the jury was discharged. However, on February 1, 1962, appellants moved that the judgment on the verdict, which had been deferred, be entered jointly and severally against all the defendants. Respondent[2] urges that this motion was ineffective for any purpose and that appellants, by failing to object prior to discharge of the jury, waived their right to complain of the verdict on appeal. In support of this position, respondent relies upon Code of Civil Procedure, section 619; *Brown* v. *Regan* (1938) 10 Cal.2d 519 [75 P.2d

---

[1] Since none of the parties to this appeal have challenged the sufficiency of the evidence to support a finding that the negligence of each defendant was a substantial cause of the plaintiffs' damages, no attempt has been made to summarize the evidence on that issue.

[2] 'Respondent' herein refers to Arthur B. Siri, Inc., no briefs having been filed by respondents Carl Sullivan, James Caples, and Peter Onsrud.

1063] ; *Kirby* v. *Adcock* (1953) 116 Cal.App.2d 570 [253 P.2d 700] ; and *Portman* v. *Keegan* (1939) 31 Cal.App.2d 30 [87 P.2d 400].

Code of Civil Procedure, section 619, provides that a verdict which "is informal or insufficient, in not covering the issue submitted" may be corrected by the jury under the advice of the court or the jury may be again sent out. In the *Brown* case, *supra,* the jury returned a verdict against one codefendant (the owner of the car responsible for the accident) in the amount of $5,000, and against the other (the driver of the car) in the amount of "Nothing Dollars." When the plaintiff sought to have the jury clarify its verdict, defendant-owner objected vigorously and persuaded the court to file the verdict as rendered. On appeal, the court concluded that defendant-owner had waived his right to question the verdict. The court pointed out that to hold otherwise would be to allow the defendant to reap a technical advantage by virtue of having allowed the erroneous verdict to stand as originally returned by the jury. In the instant case, there is clearly no indication of such litigious strategy. In the *Kirby* case, *supra,* the jury returned a verdict assessing general damages at $500 and exemplary damages at $1,500. A poll of the jury revealed that the exemplary damages had been agreed to by only eight jurors. The court accepted the $500 verdict, and discharged the jury. On appeal, the court held that the reference to exemplary damages had properly been disregarded as surplusage and that, in any event, the defendant had waived any defect in the verdict by failing to object before the jury was discharged. In the *Portman* case, *supra,* the jury failed to find on any of the issues raised by the complaint and adjudicated only those issues raised by the cross-complaint and answer thereto. On appeal, the court stated that plaintiffs should have objected to the insufficiency of the verdict, but the main problem was the failure of the jury to find on any of the issues raised by the complaint, which necessitated a reversal so that the plaintiffs could have these issues heard and determined.

None of these cases are applicable to the instant appeal. The verdict awarding plaintiffs damages in the total amount of $37,000 was in itself sufficient to constitute a complete verdict, and the additional language apportioning damages among the several defendants was mere surplusage which could be disregarded by the trial court at the time of entry of judgment. This rule has been set forth in several Cali-

fornia cases. In *Weddle* v. *Loges* (1942) 52 Cal.App.2d 115 [125 P.2d 914], the jury returned a verdict in the plaintiff's favor in the amount of $5,000, but undertook to assess $4,250 of this sum against one defendant, and $750 against the other. Although no request was made by any of the parties to have the jury correct or amend its verdict, the trial court entered a joint and several judgment in the amount of $5,000 against both defendants. The trial court subsequently reconsidered its decision and granted a new trial on the ground that the verdict had attempted to apportion damages. On appeal, the court reversed the order granting a new trial and held that the trial court had acted correctly in entering a joint and several judgment against both defendants. In so holding, the court stated: "In the present case the members of the jury made it certain and definite that upon the issues presented they found for the plaintiff, fixing damages to which he was entitled in the sum of $5,000; their effort to assess a greater amount against one defendant than another may be treated as mere surplusage." (P. 119.) In *Phipps* v. *Superior Court* (1939) 32 Cal.App.2d 371 [89 P.2d 698], the jury returned separate verdicts against each of the two defendants in the amount of $2,500. After judgment had been entered, defendants moved for a *nunc pro tunc* order correcting the judgment so as to assess a total amount of $2,500 against both defendants. The appellate court upheld this order despite the fact that the jury had been discharged without objection by either party. In so holding, the court pointed out that there was no indication that the defendants, in failing to object earlier, had remained silent for the purpose of reaping a technical advantage as in *Brown* v. *Regan, supra*. Under such circumstances, they were not estopped in their efforts to have the judgment properly construed as imposing a joint and several liability. (See also *Curtis* v. *San Pedro Transp. Co.* (1935) 10 Cal.App.2d 547 [52 P.2d 528].)

Respondent next contends that the four defendants in the instant case cannot properly be deemed joint tortfeasors since there was no evidence that any of them were acting in concert when they undertook to excavate and remove varying amounts of soil from the hillside. Under such circumstances, respondent asserts that each defendant was liable only for that portion of the total damage caused by his own operation, and the verdict should therefore be upheld in its entirety if the record contained any evidence upon which apportionment could reasonably be based. Respondent con-

tends that the evidence pertaining to the total number of cubic yards of soil removed by each defendant provided such a basis for apportionment. In support of this premise, respondent relies upon *California Orange Co.* v. *Riverside Portland Cement Co.* (1920) 50 Cal.App. 522 [195 P. 694] ; *Slater* v. *Pacific American Oil Co.* (1931) 212 Cal. 648 [300 P. 31] ; and *Griffith* v. *Kerrigan* (1952) 109 Cal.App.2d 637 [241 P.2d 296]. In the *Riverside* case, the commingled dust emitted by two cement mills resulted in damage to the plaintiff's orange orchard. The court held that the defendant, the owner of one of the cement mills, was liable only for such proportion of the total damage as was caused by its own acts and the trial court was at liberty to estimate this proportion as best it could. In the *Slater* case, a similar rule was applied to one of several adjoining landowners who had negligently permitted oil, salt, and hydrocarbon substances to run onto the plaintiff's land. In the *Griffith* case, the proportionate liability rule was applied in a situation where several parties, acting independently, had allowed water to seep onto the plaintiff's land and injure his peach orchard.

Appellants, on the other hand, contend that the rule set forth in the cases cited by respondent is totally inapplicable when the acts of the independent tortfeasors have united in causing one single and indivisible result such as the destruction of appellants' house. We agree. In *Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 433-434 [218 P.2d 17], the court stated the rule as follows: ''Where several persons act in concert and damages result from their joint tort, each person is held for the entire damages unless segregation as to causation can be established. Even though persons are not acting in concert, if the result produced by their acts are indivisible, each person is held liable for the whole. Death, burning of a building or the sinking of a boat are such indivisible results. The reason for imposing liability on each for the entire consequence is that there exists no basis for dividing damages and the law is loath to permit an innocent plaintiff to suffer as against a wrongdoing defendant. This liability is imposed where each cause is sufficient in itself as well as where each cause is required to produce the result.'' In the instant case, the destruction of appellants' house was clearly such an indivisible result. Although the record contains evidence of the approximate amount of soil excavated by each of the four defendants, there is no feasible way of determining what portion of appellants' loss is attributable to

the acts of any one defendant. It is this element of indivisibility which renders respondent's authorities inapplicable.

In determining whether a logical basis for apportionment exists, "The question is whether, upon the facts, it is possible to say that each defendant is responsible for a separate portion of the loss sustained. The distinction is one between injuries which are capable of being divided, and injuries which are not. . . . If two defendants each pollute a stream with oil, it is possible to say that each has interfered to a separate extent with plaintiff's rights in the water, and to attempt some rough apportionment of the damages; it is not possible if the oil is ignited, and burns the plaintiff's barn." (Prosser, *Joint Torts and Several Liability* (1936-1937) 25 Cal.L.Rev. 413, at pp. 442-443.)

In *Puckett* v. *Sullivan* (1961) 190 Cal.App.2d 489 [12 Cal.Rptr. 55], the plaintiffs, who owned property located on the same hillside as appellants, brought suit to recover for damage to their house and property allegedly caused by excavations on the Sullivan property. The action was brought against the same four defendants as in the instant case. In the *Puckett* case, however, plaintiffs were successful in obtaining a joint and several judgment for the full amount of their damages against all of the defendants. Defendant Arthur B. Siri, Inc., alone appealed from the judgment and contended that the damages ought to have been apportioned among the defendants since they had each acted independently in making their various excavations. The court, in rejecting this argument and affirming the judgment, held that the damage to the plaintiff's property "was a single result incapable of logical division." (P. 496.) This language is equally applicable to the present case. The trial court, in construing the verdict prior to entry of judgment, should have granted appellants' motion to enter a joint and several judgment against all four defendants. The jury's attempt to apportion damages was clearly erroneous, and should have been disregarded as mere surplusage.

The judgment is reversed, with directions to the trial court to correct the judgment in such a manner as to assess joint and several damages in the amount of $37,000 against all four defendants.

Kaufman, P. J., and Agee, J., concurred.