[Civ. No. 8488. Fourth Dist., Div. One. Sept. 15, 1967.]

VIOLA M. MIXON et al., Plaintiffs and Appellants, v. RIVERVIEW HOSPITAL et al., Defendants and Respondents.

Roy S. Giordano for Plaintiffs and Appellants.

Ball, Hunt, Hart & Brown, George C. McCarthy, Kirtland & Packard and Wallace C. Reed for Defendants and Respondents.

WHELAN, J.—Plaintiffs appeal from a judgment in their favor entered on or about February 15, 1966.

Plaintiffs are Viola M. Mixon (Viola) and B. H. Mixon (Mixon), wife and husband. Defendants are Riverview Hospital (Hospital) and Harry E. De Haven, Jr. (De Haven), a medical practitioner.

The complaint was in four causes of action. In the first, Viola alleged damage of $40,000, caused by the negligence of Hospital in failing on September 29, 1963, to keep a correct count of sponges placed in and removed from Viola's abdominal cavity during the course of an operation being performed by De Haven, as a result of which one sponge remained in the abdominal cavity after the incision had been sewed up.

In the second cause of action Viola alleged damages in the same amount based on alleged negligence of De Haven in connection with the same failure to remove the sponge before closing the incision.

A third cause of action by Viola against De Haven was based on alleged negligence on October 19, 1963, in the subsequent treatment of Viola.

The fourth cause of action was by Mixon against both defendants for loss of the services of Viola as a result of all the matters alleged in the first three causes of action.

After a jury trial, four forms of verdict were returned by the jury on December 30, 1965, and accepted by the court without objection or question by either court or counsel. Except for dates and signatures omitted, the forms of verdict were as follows:

"VERDICT FOR THE FIRST CAUSE OF ACTION

"We, the jury in the above entitled action, in the First Cause of Action find in favor of the plaintiff VIOLA MIXON

and against the defendant RIVERVIEW HOSPITAL and assess damages in the sum of $12,500.00.

"VERDICT FOR SECOND CAUSE OF ACTION

"We, the jury in the above entitled action, in the Second Cause of Action find in favor of the plaintiff VIOLA MIXON and against the defendant HARRY E. DEHAVEN, JR., M.D., and assess damages in the sum of $12,500.00.

"VERDICT FOR THIRD CAUSE OF ACTION

"We, the jury in the above entitled action, in the Third Cause of Action find in favor of the defendant HARRY E. DEHAVEN, JR., M.D. and against the plaintiff VIOLA MIXON.

"VERDICT FOR FOURTH CAUSE OF ACTION

"We, the jury in the above entitled action, in the Fourth Cause of Action find in favor of plaintiff B. H. MIXON and against defendants RIVERVIEW HOSPITAL and HARRY E. DEHAVEN, JR., M.D., and assess the damages to RIVERVIEW HOSPITAL in the sum of $2,500.00 and assess the damages as to HARRY E. DEHAVEN, JR., M.D. in the sum of $2,500.00."

A photostat of the verdict on the fourth cause of action shows that originally the figures "$5,000.00" had been put in the first of the two spaces finally occupied by the figures "$2,500.00"; that the figures "$5,000.00" had been scored through and the figures "$2,500.00" placed above them.

The clerk, on December 31, 1965, entered judgment that Viola recover from Hospital the sum of $12,500; that Viola recover from De Haven the sum of $12,500; that Mixon recover from Hospital the sum of $2,500; that Mixon recover from De Haven the sum of $2,500.

Hospital filed notice of motion for new trial on January 17, 1966. In the statement of counsel in support of the motion, it is said "Judgment thereon was entered for plaintiff VIOLA MIXON for $12,500 as against the RIVERVIEW HOSPITAL and for $12,500 as against HARRY E. DEHAVEN, JR., M.D., as a several judgment. The court should have construed the verdict as being a total verdict of $12,500 against both defendants and should have entered judgment to that effect. Likewise, judgment was entered for plaintiff B. H. MIXON for $2,500 as against RIVERVIEW HOSPITAL and for $2,500 as against HARRY E. DEHAVEN, JR., M.D., being a several judgment. The court should have construed the verdict for B. H. MIXON as being for the total sum of $2,500 against

both defendants and should have entered judgment to that effect.''

Minutes of the court for February 11, 1966 show the following actions taken. ''Judgment entered December 31, 1965 is hereby ordered vacated and set aside. The following judgment is ordered nunc pro tunc [*sic*] as of December 30, 1965: 'Joint and several judgments in favor of plaintiff Viola M. Mixon and against Riverview Hospital, a California corporation and Harry E. DeHaven, Jr. in the amount of $12,500.00. Joint and several judgments in favor of plaintiff B. H. Mixon and against Harry E. De Haven, Jr. in the amount of $2,500.00 [*sic*]. . . . Motion for a new trial denied.' ''

There was then entered *nunc pro tunc* as of December 30, 1965, and filed on February 14, 1966, a joint and several judgment for $12,500 against both defendants in favor of Viola; and a joint and several judgment for $2,500 against both defendants and in favor of Mixon.

#### OTHER MATTERS TO BE NOTED

It is urged by defendants that their liability as fixed by the jury's findings was and could only be joint and several. At the time of oral argument plaintiffs' counsel conceded that at the close of evidence it was undisputed that defendants, if both should be held liable, were joint tortfeasors, but plaintiffs claim the unusual consequences of joint and several liability and of non-severability of damages were waived or stipulated away by the actions of counsel for defendants in making certain stipulations and objecting to certain instructions.

#### THE STIPULATIONS AND INSTRUCTIONS

Before the jury was instructed, forms of verdict and instructions were discussed in chambers.

Plaintiffs had requested that the following instruction be given: ''If you should find that plaintiff is entitled to recover against (both defendants) (more than one defendant), you must deliver a verdict in one, single sum against (both) (all) defendants (whom you find to be liable).'' It was indorsed by the court ''Refused as covered.''

Plaintiffs claim that Hospital had objected to the giving of the instruction. Counsel for Hospital asked this question during the session in chambers: ''You are not going to give 53-a?'' Such a question cannot fairly be termed an objection. The record does not support the claim that the defendants objected to the instruction requested by plaintiffs.

Plaintiffs' claim is further negated by the fact that defendant Hospital had requested the following instruction: ''If you find that the plaintiff sustained injuries and that each of the defendants was negligent and that the negligence of each was a proximate cause of an injury to the plaintiff, then the plaintiff has met the burden of proof resting upon him and you must find each of the defendants liable for all of the injuries sustained by the plaintiff. However, if you find from the evidence that the negligence of the defendant Riverview Hospital was not a proximate cause of certain injuries sustained by the plaintiff, then you may not assess damages against him for the injuries to which his negligence did not contribute, the burden of proof being upon the defendant.'' That requested instruction also was indorsed ''Refused as covered.''

The stipulation referred to by plaintiffs is that expressed in the following passage during the session in chambers:

''THE COURT: . . . Is it stipulated then that these verdicts

''MR. McCARTHY [counsel for Hospital] : Not those, these over here.

''THE COURT: That the instruction explaining the verdicts and the verdicts are proper and shall be given to the jury? I don't care whether you do or not. If you want to, that's fine.''

The ''instruction explaining the verdicts'' referred to was as follows:

''You are instructed that this law suit purports to allege four separate causes of action and you must return a separate verdict as to each cause of action. The causes of action are:

''The First Cause of Action asserts a claim by VIOLA MIXON based on alleged negligence of RIVERVIEW HOSPITAL in allowing a surgical sponge to remain within the body of VIOLA MIXON on October 1, 1963, and seeks damages for injuries proximately resulting therefrom;

''The Second Cause of Action asserts a claim by VIOLA MIXON based on alleged negligence of HARRY E. DE HAVEN, JR., M.D., in allowing a surgical sponge to remain within the body of VIOLA MIXON on October 1, 1963, and seeks damages for injuries proximately resulting therefrom;

''The Third Cause of Action asserts a claim by VIOLA MIXON alleging negligence of HARRY E. DE HAVEN, JR., M.D., in connection with claimed unnecessary surgeries, malpractice in the performance of said surgeries and malpractice in failing to take an X-ray during the post-operative treatment and seeks damages for injuries proximately resulting therefrom;

. "The Fourth Cause of Action asserts that plaintiff B. H. MIXON is entitled to damages for the pecuniary value of the loss of his wife's services due to the alleged negligence of either defendant or both as above-stated."[1]

[1]The other instructions given, so far as they might possibly bear upon the questions of joint or several liability or severability of damages, are as follows: "Although there are two plaintiffs in this action, the case of each is separate from, and independent of, that of the other. The law permits them to join as plaintiffs solely because their claims involve the same incident. However, their rights, if any, are separate, not joint. The instructions given you apply to each plaintiff unless otherwise stated, and you will determine each plaintiff's case separately, to the same effect as if you were trying two separate actions."

"In the event you should find that each plaintiff is entitled to recover, you will assess the damage of each separately and return a verdict in a separate amount for each."

"This does not mean that the law seeks and recognizes only one proximate cause of an injury, consisting of only one factor, one act, one element of circumstance, or the conduct of only one person. To the contrary, the acts and omissions of two or more persons may work concurrently as the efficient cause of an injury, and in such a case, each of the participating acts or omissions is regarded in law as a proximate cause. . . ."

"When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently and as proximate causes to the injury of another, each of such persons is liable. This is true regardless of the relative degree of the contribution."

". . . And if it [a hospital] undertakes, through the agency of any person in its employ, to render to the patient the services of a physician, surgeon, or nurse, its duty is to perform such services in accordance with the standard of care required by law of a physician, surgeon, or nurse, respectively, as outlined elsewhere in my instructions.

"A violation by a hospital of any of the duties that I have defined is negligence. . . ."

"Regardless of who employs or pays a nurse who takes part in the performance of services incidental to such surgery, if, while engaged in any such service, the nurse is under the direction of a certain physician or surgeon in charge, so as to be his temporary servant or agent, any negligence on the part of any such assisting person, occurring while the latter is under the physician's or surgeon's direction, is deemed in law to be the negligence of such physician or surgeon."

"Plaintiff claims there was an accidental occurrence; in that a surgical sponge was left in plaintiff's body; defendants deny it. If, and only in the event, you should find that, as claimed by plaintiff, there was such an accidental occurrence and plaintiff was injured thereby, then you are instructed as follows:

". . . .

"To determine first whether the injury for which plaintiff seeks to recover damages was proximately caused by leaving a surgical sponge in plaintiff's body.

"If you find that such leaving of a surgical sponge in plaintiff's body was not a proximate cause of any injury to plaintiff, then you will find against the plaintiff and in favor of the defendants as far as the sponge is concerned. On the other hand, if you find that plaintiff's injury or condition was proximately caused by such treatment by any one or more of the defendants, then you are further instructed as follows as to those particular defendants: . . ."

"If, adhering to the court's instructions, you should find that plaintiff

The forms of verdict referred to in the stipulation were those actually submitted to the jury, and were 10 in number. In addition to the forms of verdict returned on the first and second causes, there was another as to each of those causes permitting a finding favorable to the defendant named in such cause; a form permitting a finding in favor of Viola on the third cause; and three forms as to the fourth cause, one of which provided for finding against one defendant and in favor of the other, and the second of which reversed the positions of the defendants, while a fourth provided for a finding favorable to both defendants.

Twelve other forms of verdict had been prepared, but were not used. Among them were forms permitting a separate recovery by Viola against either of the defendants and for a joint and several recovery against both defendants, but not directed to any specific cause of action.

It has been represented by Hospital that the last-mentioned form was not used because it could not be determined from such a verdict whether the jury included in it a finding in favor of Viola on her third cause of action against De Haven in a matter concerning which Hospital was not charged with negligence.

It is clear from all the foregoing that the two requested instructions quoted which were refused as covered were not in fact covered by the instructions given; that the jury was not expressly instructed that there could be but a single award in favor of either plaintiff.

### The Questions Presented

1. Were the verdicts as returned by the jury ambiguous?

2. If the judgment entered by the clerk incorrectly interpreted the verdicts, did the court have the power to enter a

is entitled to a verdict against defendants, it then will be your duty to award the party so entitled such amount of damages as will compensate her reasonably for all detriment suffered by her and of which those others' negligence, as found by you, was a proximate cause—whether such detriment could have been anticipated or not.''

''If, under the court's instructions, you should find that plaintiff is entitled to a verdict, in arriving at the amount of the award, you shall determine each of the items of claimed detriment which I now am about to mention, provided that you find it to have been suffered by her, and as a proximate result of the act or omission upon which you base your finding of liability.''

''If you should find that the plaintiff B. H. Mixon is entitled to recover damages by this action, you shall award him also a sum that will compensate him reasonably for any loss of his wife's services that he has suffered and is reasonably certain to suffer in the future as a proximate result of the accident in question. . . .''

different judgment based upon a correct interpretation of the verdicts?

3. What is the correct interpretation of the verdicts?

4. If the court has incorrectly interpreted the verdicts, what is the effect of such incorrect interpretation?

5. Have defendants waived or are they estopped to assert the claim that there should have been only a single joint and several recovery against both joint tortfeasors in favor of each of the plaintiffs?

While we have separately posed the questions presented, certain of them are in fact inter-related.

■ As we shall discuss, the court's power to interpret a verdict and direct the entry of a judgment different from that entered by the clerk requires that the clerk shall have misinterpreted the verdict.

Thus the possibility of ambiguity immediately suggests itself where the court makes such an interpretation.

On the other hand, the court's interpretation may be incorrect even though the clerk's interpretation also may have been wrong.

GENERAL EFFECT OF SEPARATE VERDICTS AGAINST JOINT TORTFEASORS

Verdicts including separate awards against joint tortfeasors have often been the basis for a reversal of the judgments. (*McCool* v. *Mahoney*, 54 Cal. 491, 493; *Oldham* v. *Aetna Ins Co.*, 17 Cal.App.2d 144, 146 [61 P.2d 503].)

VERDICTS INVOLVING STATUTORY LIABILITY OF
AUTOMOBILE OWNERS ARE TO BE DISTINGUISHED

Cases involving the statutory liability of a motor vehicle owner for the negligence of a permissive operator must be considered as being in a class by themselves because of the owner's statutory right to be indemnified by the driver. Because of that right, separate verdicts against owner and operator in general are not to be interpreted as providing for recovery of the total of the amounts mentioned in the separate verdicts. The allowance of such a total recovery would impose upon the operator a greater liability than the verdict against him had fixed. (*Aynes* v. *Winans*, 33 Cal.2d 206, 208-209 [200 P.2d 533].)

In such cases an award against the operator for less than the amount of the owner's statutory liability usually fixes the amount of the joint and several judgment against both. (*Bradford* v. *Brock*, 140 Cal.App. 47, 50-51 [34 P.2d 1048]; *Phipps* v. *Superior Court*, 32 Cal.App.2d 371, 373-374, 375 [89 P.2d

698]; *Phipps* v. *Patterson,* 27 Cal.App.2d 545 [81 P.2d 437].)

Such separate verdicts in the amount of $5,000 each against owner and operator were returned in *Kerrison* v. *Unger,* 135 Cal.App. 607 [27 P.2d 927]. It was taken for granted that they represented a joint and several verdict for $5,000. Earlier verdicts of $3,000 against the operator and $2,500 against the owner had been refused acceptance by the court.

In *Baker* v. *Rodriguez,* 41 Cal.App.2d 58, 61 [105 P.2d 1018], a separate form of verdict was returned against owner for $5,000 and against driver for $1.00. A judgment was entered for $5,000 against both defendants after the court had had the following conversation with the jury foreman: " '. . . The Court: . . . Mr. Rodriguez is the owner of the truck, and his liability is limited to the liability of the driver. . . . The (Jury) Foreman: If we should place $5000 against the driver, which we found against the owner of the truck, would that necessarily mean that we were awarding $10,000? The Court: It would not, as a matter of law. The Foreman: We were confused by that and not having a legally trained mind we didn't know. . . . We were discussing that and we were undecided and were of the consensus of opinion [*sic*] that $1 would cover it and that is why we put it that way.' "

A similar result so far as the owner's liability is concerned may follow as the result of appellate court interpretation even where the separate verdict against the operator exceeds and the separate verdict against the owner is less than the amount of the statutory liability of the owner.

But where the verdict in terms makes a total award and then attempts to divide it between owner and operator, the total award will fix the amount of the judgment against the operator with the judgment against the owner being joint to an extent not to exceed his statutory liability. (*Sparks* v. *Berntsen,* 19 Cal.2d 308, 311 [121 P.2d 497].)

In certain cases a different result has been reached. In *Brown* v. *Regan,* 10 Cal.2d 519 [75 P.2d 1063], a separate verdict was returned for "Nothing Dollars" as to operator and $5,000 against owner. A judgment entered in that form was allowed to stand because when plaintiff sought to have the jury instructed to clear up the ambiguity defendant opposed successfully. The Supreme Court, in affirming, said, at page 523: ". . . when a verdict is not in proper form and the jury is not required to clarify it, any error in said verdict is waived by the party relying thereon who at the time of its

rendition failed to make any request that its informality or uncertainty be corrected.''

In *Snodgrass* v. *Hand*, 220 Cal. 446, 447 [31 P.2d 198], the verdict was in the following form: '' 'We, the jury in the above entitled cause, find in favor of plaintiff and against defendant Henry W. Hand [operator of the car] and fix plaintiff's damages against said defendant, in the sum of Five Thousand ($5,000) and jointly in favor of plaintiff against defendant Dora B. Hand jointly with Henry W. Hand and fix plaintiff's damages against said defendant in the sum of Five Thousand Dollars ($5000).' '' The verdict was construed by the trial court to be an award against the driver and owner jointly for $5,000 and against the driver individually for a further $5,000. In affirming the judgment, the Supreme Court noted that the use of the word ''and'' in the verdict made the interpretation proper, since it indicated that the jury had intended to award $5,000 against the operator alone in addition to the joint award in the amount of the owner's maximum liability.

In *West* v. *Duncan*, 205 Cal.App.2d 140, 141 [22 Cal.Rptr. 833] a single form of verdict was returned in the following language: '' 'For plaintiff, FRANCIS WEST, against defendant JACQUALYN T. DUNCAN [operator], assessing damages at $5,605.00; and against defendant, PETE OLSON, assessing damages at $5,000.00 (amount of DUNCAN damages or $5,000.00, whichever is the lesser).' ''

The clerk entered judgment that plaintiff recover $5,605 from Duncan, the operator, and $5,000 from Olson, the owner. On motion after entry of judgment for an interpretation of the verdict, the trial judge expressed this view, at page 142: '' '. . . I make the interpretation that it was the intention of the jury to award a total verdict of $10,605.00, I know of no court order I can make on the subject.' ''

The Court of Appeal reversed the judgment because of ambiguity in the verdict.

### WHERE STATUTORY LIABILITY OF OWNER OF MOTOR VEHICLE NOT INVOLVED

In *Lynch* v. *Birdwell*, 44 Cal.2d 839 [285 P.2d 919], parents of a minor defendant were charged on the basis of their statutory liability as indorsers of the minor's application for a driver's license; a verdict for separate amounts against minor and parents was returned and judgment entered in the language of the verdict. Interpretation was

relied upon to sustain the judgment, as well as the fact that defendants did not offer objection to the form of the verdict.

It is almost a commonplace that where an award is made in a fixed sum and the verdict then attempts an apportionment of the total among several joint tortfeasors, California courts treat the attempted apportionment as surplusage. (*Marriott* v. *Williams,* 152 Cal. 705, 711 [93 P. 875, 125 Am.St.Rep. 87]; *Dauenhauer* v. *Sullivan,* 215 Cal.App.2d 231, 236 [30 Cal. Rptr. 71]; *Weddle* v. *Loges,* 52 Cal.App.2d 115, 118-119-120 [125 P.2d 914].)

However, where the verdict on its face does not fix a total which it attempts to apportion among several joint tortfeasors, separate awards against joint tortfeasors sometimes have been interpreted as fixing the award in the amount of one of the separate verdicts where the same amount is awarded against each defendant. Thus in *Thomson* v. *Catalina,* 205 Cal. 402, 403 [271 P. 198], the language of the opinion indicates that the verdicts and the judgment entered thereon were considered as being for a total award of compensatory damages of $300: ". . . three separate verdicts in favor of the plaintiff were returned; one against the appellant Mike Catalina in the sum of $300 compensatory damages and $200 exemplary damages; one against the appellant L. A. Edwards in the sum of $300 compensatory damages and $500 exemplary damages, and one against appellant Oscar E. Winburn in the sum of $300 compensatory damages and $1,000 exemplary damages. Upon these three several verdicts several judgments were entered in favor of the plaintiff and against the respective appellants in the amounts named therein."[2]

In *West* v. *Duncan, supra,* 205 Cal.App.2d 140, the trial court had expressed an opinion that two separate different amounts in the verdict indicated the intention of the jury to award a total of the sum of the separate amounts. The Court of Appeal refused to give such an interpretation, but held the verdict to be ambiguous and reversed on that ground.

We have noted that in another case involving a vehicle owner's statutory liability (*Aynes* v. *Winans, supra,* 33 Cal. 2d 206), separate verdicts for $5,000 each were returned. There the trial court had interpreted the verdicts as being for

---

[2]See also *Davis* v. *Orum,* 34 Ala.App. 387 [40 So.2d 442] (Court of Appeal of Alabama), where two separate verdicts in the same amount were returned against two defendants and separate judgments entered thereon. The court held that there had not been an apportionment, mentioning that the prayer of the complaint was for less than the sum of the two verdicts.

a total award of $10,000. That interpretation was not accepted by the Supreme Court, which did not, on the other hand, interpret the verdicts to mean a joint and several judgment of only $5,000, but reversed with instructions to try the issue of damages only.

In *Oldham* v. *Aetna Ins. Co., supra,* 17 Cal.App.2d 144, a verdict against two defendants was returned for compensatory damages in a different amount as to each defendant in an action for false arrest. The judgment entered against the defendants separately for the separate amounts mentioned in the verdict was reversed.

Also, in *McCool* v. *Mahoney, supra,* 54 Cal. 491, 493, a malicious prosecution action, in which the verdict awarded a different amount against each of two defendants, a reversal resulted.

However, in *Aitken* v. *White,* 93 Cal.App.2d 134, 144 [208 P.2d 788], the court voiced dictum to the effect that where the award against two defendants in a false arrest case was in two different amounts, the verdict might be interpreted by the trial court as supporting a joint and several judgment against both for the lesser amount. The trial court's action, however, had been to grant a motion for a new trial unless a judgment in that form should be entered *nunc pro tunc* with plaintiff's written consent.

## DUTY OF COURT TO INTERPRET VERDICT

". . . it is the function of the trial judge to interpret the verdict from its language considered in connection with the pleadings, evidence and instructions." (*Fernandez* v. *Consolidated Fisheries, Inc.,* 117 Cal.App.2d 254, 263 [255 P.2d 863].)

"In construing a verdict reference may be had to the pleadings, the evidence and the charge of the court." (*Snodgrass* v. *Hand, supra,* 220 Cal. 446, 448.) See also *West* v. *Duncan, supra,* 205 Cal.App.2d 140, 143.

▉ Where the trial court has refused to interpret the verdict or has interpreted it erroneously, the appellate court will interpret the verdict if it is possible to give a correct interpretation. (*King* v. *Unger,* 25 Cal.App.2d 632 [78 P.2d 255]; *Bradford* v. *Brock, supra,* 140 Cal.App. 47. 50-51; *Dauenhauer* v. *Sullivan, supra,* 215 Cal.App.2d 231, 236; *Weddle* v. *Loges, supra,* 52 Cal.App.2d 115, 118-119.)

But if the verdict is hopelessly ambiguous, hopelessly inconsistent or incomprehensible, a reversal is required. (*Halli-*

*nan.* v. *Prindle,* 220 Cal. 46 [29 P.2d 202]; *West* v. *Duncan, supra,* 205 Cal.App.2d 140, 141, 142; *Shell* v. *Schmidt,* 126 Cal.App.2d 279 [272 P.2d 82].)

### PLAINTIFF'S CONTENTIONS

 Plaintiffs pay acknowledgment to the rule that there should be only one verdict in a single sum for damages caused by the negligence of joint tortfeasors, expressed in the following cases, among many others: *Marriott* v. *Williams, supra,* 152 Cal. 705, 711; *McCool* v. *Mahoney, supra,* 54 Cal. 491, 493; *Aynes* v. *Winans, supra,* 33 Cal.2d 206, 208-209; *Browand* v. *Scott Lbr. Co.,* 125 Cal.App.2d 68, 70, 71, 73 [269 P.2d 891]; *Phipps* v. *Patterson, supra,* 27 Cal.App.2d 545; *Snodgrass* v. *Hand, supra,* 220 Cal. 446, 447, 448.

Plaintiffs contend, however, that defendants agreed to the forms of verdict and are therefore estopped to rely upon the usual rule; and, moreover, since defendants did not question the forms of the verdicts as returned by the jury or ask to have them clarified by the jury, defendants have waived any right to question the forms of the verdicts.

 Prior approval of the form of a verdict or a failure to object to the form of verdict submitted to a jury has often been held to be a waiver of any defect in the form. (*Hercules etc Co.* v. *Automatic etc. Corp.,* 151 Cal.App.2d 387, 400-401 [311 P.2d 907]; *Lynch* v. *Birdwell, supra,* 44 Cal.2d 839, 851-852; *Vargas* v. *Ruggiero,* 197 Cal.App.2d 709, 713 [17 Cal. Rptr. 568].)

Failure of a party to object to the form of a verdict as returned by a jury or to seek a clarification of such verdict has been said in many cases to be a waiver of any defect. (*Fairfield* v. *Hamilton,* 206 Cal.App.2d 594, 605 [24 Cal.Rptr. 73]; *Vargas* v. *Ruggiero, supra,* 197 Cal.App.2d 709, 713; *Murray* v. *Babb,* 30 Cal.App.2d 301, 305 [86 P.2d 146]; *Fransen* v. *Washington,* 229 Cal.App.2d 570, 574 [40 Cal.Rptr. 458]; *County of Humboldt* v. *Shelly,* 220 Cal.App.2d 194, 199-200 [33 Cal.Rptr. 758]; *Lynch* v. *Birdwell, supra,* 44 Cal.2d 839, 851, 852; *Brown* v. *Regan, supra,* 10 Cal.2d 519, 523; *Kirby* v. *Adcock,* 116 Cal.App.2d 570 [253 P.2d 700].) In at least one of those cases there was active and successful opposition against clarification by counsel for the party that sought on appeal to attack the judgment. (*Brown* v. *Regan, supra,* 10 Cal.2d 519.)

But the failure to make objection before the jury is discharged has not in every case worked automatically against the party that has appealed from the judgment. In *Dauen-*

*hauer* v. *Sullivan, supra,* 215 Cal.App.2d 231, 236, the question was first raised upon a motion made after the jury was discharged. Nevertheless, the judgment was reversed. In *Aynes* v. *Winans, supra,* 33 Cal.2d 206, 208-209, also, there was a reversal, although the question was first raised on motion for new trial. In *West* v. *Duncan, supra,* 205 Cal.App.2d 140, 141-142, no request was made by either party for clarification. It does not appear that in *Shell* v. *Schmidt, supra,* 126 Cal.App.2d 279, any question was raised by counsel in the trial court as to the inconsistency of the verdicts.

In *Phipps* v. *Superior Court, supra,* 32 Cal.App.2d 371, the court said, at page 375 : ''In the absence of a motion by one of the litigants, or a request by the clerk, the trial court is not called upon to construe the verdict immediately with a view to the entry of the judgment. . . . The *nunc pro tunc* order now under review is not an order vacating a previous judgment, but is a correction of a clerical mistake in the original entry. . . . In the present case the clerk inadvertently entered a several judgment against each defendant, when in fact the verdict correctly construed *is a joint and several judgment* and should have been entered against both defendants.''

It is clear, therefore, that it is not universally true that clarification of a verdict must be made before the jury has been discharged.

In the case at bench the question as to the meaning of the verdicts was raised in the trial court by Hospital on motion for new trial.

It is plaintiffs who now attack the interpretation of the verdicts by the trial court. It may be questioned whether it was not equally the duty of plaintiffs' counsel to have raised in the court below the equivocal nature of the verdicts viewed within the framework of the facts.

The real problem is one of placing a correct interpretation upon the verdicts returned. If the trial court correctly interpreted them, the case is closed. If he did not interpret them correctly and they are capable of such correct interpretation, it is our duty to make that interpretation.

In *Shell* v. *Schmidt, supra,* 126 Cal.App.2d 279, 291, 293-294, the following appears: ''That but one cause of action was basically alleged is apparent. Each set of plaintiffs was seeking recovery of such amount as would place their home in the condition it would have been had compliance been had with the plans and specifications. To do this, it was alleged, would

require $4,800. This sum was sought either on the theory of breach of contract or fraud, or both. But no matter how many theories of recovery were stated or proved, respondents were entitled to but one recovery which could not exceed $4,800. Double recovery could not be secured lawfully for the same identical violations of the plans and specifications. Once they have been reimbursed for their damages, regardless upon what theory such reimbursement is made, they have no lawful right to any more damages. . . .

" . . . .

"Thus the jury was told, if it found both fraud and breach of contract, to bring in separate verdicts after arriving at the total damage and dividing that figure in any way it saw fit. This was error. It resulted in verdicts and judgments that are highly inconsistent and contradictory. If each set of respondents was damaged in the amount of $1,250 by reason of Schmidt's failure to comply with the plans and specifications, as found by the jury in its verdicts on the first 12 counts, that same set of respondents was damaged in the amount of the same $1,250 because of Schmidt's breach of his contract to build in accordance with the plans and specifications. Yet the jury by its verdict on the 13th count has fixed this damage at an additional $12,000 for all respondents, or $1.000 for each set of respondents. This was done pursuant to erroneous instructions that it was permissible to thus split the total damages. Conceivably, the error would not have been prejudicial if both theories found by the jury were sustainable by the record. But, where, as here, nine of the separate verdicts are not sustainable, and the sustainable verdict is in a lump sum, it is obvious that this splitting of the damages was prejudicial to appellant as well as to respondents."

In the instant case we do not deal with a single cause of action stated upon two theories of recovery, but with a single cause of action separately stated against each of two joint tortfeasors. To give to the verdicts under consideration here either of the interpretations contended for might produce an unjust result.

### THE TRIAL COURT'S INTERPRETATION OF THE VERDICTS

In favor of the trial court's interpretation of the verdicts are the following considerations:

There is no transcript before us of the oral proceedings had in the presence of the jury, other than the instructions given. Evidence known to the judge as to the value of the services of

Viola to Mixon might have been an aid to the interpretation of the verdict on the fourth cause of action.

The language in the verdicts as to the first two causes of action was that "we . . . assess damages in the sum of $12,-500.00." The language was not that Viola "recover" from the defendant respectively named in the separate forms of verdict "the sum of $12,500.00."

The jury was instructed as to what the elements of Viola's damages were; they were instructed in effect that if the negligence of both defendants contributed concurrently to Viola's injuries, both would be liable; that Hospital had a duty of care for services performed through a nurse in its employ; and that the doctor also was responsible for the negligent conduct of a nurse working under his direction.

The fact, known to the court and the parties, that if both defendants were liable their liability would be joint and several is a further consideration in support of the court's interpretation.

Weighing against the correctness of the court's interpretation of the verdicts are these considerations:

The jury was not advised that Viola's damages were not severable, or that they might not be apportioned between the defendants.

The jury was not given such advice concerning Mixon's damages; and the form of verdict in his favor indicates that as to him the jury might have intended a total award of $5 000, apportioned equally between the defendants.

The "stipulated" instruction might have suggested that damages sought under the first cause of action were different from those sought under the second cause of action.

### CONCLUSION

Separate forms of verdict against joint tortfeasors have often been interpreted as attempting to apportion damages, and, therefore, as attempting to award a total equal to the sum of the separate verdicts.

Because of such attempted apportionment, it has been the rule. subject to certain exceptions, to reverse judgments that have given to such verdicts their intended effect.

It has not always been true, however, that such verdicts have been interpreted as intending a total award equal to the sum of the separate verdicts.

In the case at bench, the court knew that Viola had but a single cause of action based upon the leaving of a sponge inside her body, regardless of the number of persons that might have been negligent in causing that result; he knew also that the damages for such injury were indivisible and not to be apportioned; that there should be only a single award of damages as to each of the plaintiffs and as to each of the plaintiffs against both defendants.

While the trial judge had that knowledge, there is such grave doubt that the jury understood those matters that the judgment must be and it is reversed and the cause remanded for trial of the issue of damages only.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 5, 1967, and appellants' petition for a hearing by the Supreme Court was denied November 8, 1967.