**DISTRICT OF COLUMBIA, Appellant,**

v.

**Norma J. FOWLER, Appellee.**

**No. 81–1050.**

District of Columbia Court of Appeals.

Argued March 22, 1984.

Decided Aug. 23, 1985.

---

**458**

Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C., at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and William J. Earl, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Charles A. Brady, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

After notifying the District of Columbia of her intention to sue,[1] appellee filed this action against the District of Columbia, seeking damages under theories of nuisance, negligence, and encroachment for the improper construction and maintenance of an alley adjacent to her property. In particular, appellee alleged that inadequate maintenance of the alley had caused it to deteriorate, resulting in structural damage to her house and garage. She also alleged that a three-inch-wide strip along the side of the alley next to her house was on her side of the property line. In a non-jury trial, the court granted the District's motion to dismiss the negligence count at the close of the plaintiff's case. At the end of the trial, the court entered judgment for appellee and awarded her $1 in damages on the encroachment claim and $50,375 on the nuisance claim. The District's post-trial motion to set aside the judgment was denied.

Because it is not presented to us, we do not address the encroachment issue.[2] With respect to the nuisance claim, we affirm the trial court's finding that a nuisance existed, and that the District was liable for failing to abate it, but we reverse the judgment and remand this case for reconsidera-

---

1. D.C.Code § 12–309 (1981) provides that an action against the District of Columbia for unliquidated damages to person or property may not be maintained unless written notice is given to the Mayor "within six months after the injury or damage was sustained," setting forth "the approximate time, place, cause, and circumstances of the injury or damage."

2. The District states in its brief that it does "not challeng[e] the trial court's ruling or imposition of nominal damages on appellee's encroachment claim," but nevertheless goes on to explain why that ruling "appear[s] to be erroneous." We need not decide whether this "unchallenged" ruling was correct.

tion of the amount of damages, if any, to be awarded.

## I

In 1961 appellee and her husband purchased a house on Underwood Street, N.W., which had been built in 1924.[3] A public alley, paved with concrete slabs, had been constructed in 1925 adjacent to the lot on which the house stood.

About three years after they had moved in, Mr. and Mrs. Fowler began making repairs on a regular basis to cracks that repeatedly appeared in the walls and ceilings of both their house and their garage. For several years they were unable to identify the cause of these cracks. Some of the repairmen who worked on the house attributed the cracks to vibrations resulting from vehicular traffic in the alley, but others suggested that they might have been caused by a settling of the foundation. Finally, in 1978 Mr. Fowler noticed a loose slab of concrete in the alley and concluded that the alley was the source of the trouble.[4]

The Fowlers then sought help. Roger Butler, a member of a civil engineering firm, testified that he inspected the property in July 1979 and concluded that the vibrations in the alley were due to inadequate subsoil support for the concrete pavement. He said that the alley, the ga-

rage roof, and the eastern wall of the Fowler home needed to be replaced. The evidence established that the Fowlers had notified the District of Columbia of the problem and requested assistance sometime in late 1978 or early 1979.[5] Frederick Thane, a District employee who appeared as an expert in the measurement of vibrations and structural damage, testified that he and a colleague inspected the Fowler home on October 3, 1979. In addition, there was evidence that other District employees were dispatched at some point to make repairs to the alley, but it is not clear exactly when these repairs were made.[6]

Experts from both the District and the private engineering firm testified as to the relationship between the alley vibrations and the damage to the Fowler property. Mr. Thane, the District's witness, told the court that during his October 3 visit he conducted tests with a vibration meter while a colleague drove an automobile through the alley in an attempt to reproduce the conditions that the Fowlers had noticed. He testified that the reading on his meter reflected the presence of vibrations which, if prolonged, were significant enough to cause damage. Like Mr. Butler, appellee's witness, Mr. Thane concluded that at least some of the damage to the Fowlers' property was the result of alley vibrations. A third witness, Louis Gilford, also a civil engineer, testified as to the cost

3. Although Mr. and Mrs. Fowler were originally co-owners of the property, Mrs. Fowler testified that she had become its sole owner.

4. This conclusion was supported by the testimony at trial. Expert witnesses testified that concrete slabs, such as the ones that constituted the surface of the alley, would vibrate when vehicles passed over them. Vehicular traffic caused the slabs abutting the garage to "pump" against it, leading to the movement of a garage wall, and eventually to a crack in the garage roof. Because this roof was "tied into the side of the ... residence," damage to the house also resulted.

5. The court did not determine the specific date on which the District was given notice of the problem. Instead, it simply stated that "the District was put on notice ... according to the

testimony of Mrs. Fowler ... approximately six months prior to the filing of the lawsuit. According to Mr. Fowler, maybe a year or so before the filing of the lawsuit." The suit was filed on October 10, 1979, which means that the District had notice of the condition of the alley sometime between October 10, 1978, and April 10, 1979.

6. The record is ambiguous as to when, or how many times, the District attempted to repair the alley. The parties do agree, however, that District of Columbia work crews made several visits to the alley after Mr. Thane's inspection in October 1979. They also agree that the District did some work on the alley sometime after a call from Mr. Fowler but before Mr. Butler's visit in July 1979. This earlier effort, however, consisted only of spreading a blacktop surface on portions of the alley.

of repairing the structural damage. Limited by the court to those portions of the property which Mr. Butler had said were damaged as a result of the vibrations, Gilford stated that the total cost of repairs would be $64,992.

■ In announcing its decision at the end of the trial, the court found that "the construction of this alley in such a fashion that it abutted the garage, without any space in between, and the failure to maintain the alley in a reasonably safe ... condition [so] as to avoid the cracks and the vibrations due to vehicular traffic" constituted a public nuisance and caused damage to the Fowlers' property.[7] The court ruled, however, that in computing the amount of its judgment, it would take into account only those damages that could be measured from "the point at which [the District] was put on notice of the existence of the nuisance and allowed an opportunity to abate that nuisance."

Turning to the actual calculations, the court first rejected evidence that the Fowlers had spent approximately $20,000 in repairs over a fifteen-year period before the District was put on notice of the condition of the alley. Then, focusing on Mr. Gilford's testimony, the court excluded $7,000 which Gilford had estimated as the cost of replacing the garage wall next to the alley, since Mr. Butler had testified that the wall could be repaired, and "[u]nder the proper element of damages, one can only be compensated for the necessary cost of repair, if that's possible, or replacement if repair would not solve the problem." In addition, the court rejected Mr. Gilford's estimate of $700 for repairs to the dining room because it was not one of those areas in which structural damage had been attributed by Mr. Butler to the alley vibrations. The court then concluded:

> [T]hat leaves us with ... $18,000 for replacement of the ceiling of the garage, $16,000 for the den, and I find from the

testimony that the den has got to be torn down and put back in order to get the floors of the patio itself.... So that leaves $18,000 plus $16,000 plus $6,300, which would be the interior wall minus $700 for the dining room. That comes to a total of $40,300 .... [To] the base figure of $40,300, I added a ten percent figure for profit, which is $4,030 and I added 15 percent ... for overhead, which is $6,045. Adding those two figures to the $40,300 I end up with $50,375 to be awarded to the plaintiff under the nuisance theory, plus one dollar under the encroachment theory, making a total award to the plaintiff of $50,376.

The District contends that the award of damages on Mrs. Fowler's nuisance claim was erroneous.

## II

■ A landowner who creates a nuisance may be held liable for all resulting damages from the time of its creation up to the entry of judgment. *See* 1 F. HARPER & F. JAMES, THE LAW OF TORTS § 1.30, at 91 (1956). When the landowner did not create the nuisance, however, he is not liable for damages resulting from it until he receives actual or constructive notice of it. *E.g.,* *Clarke v. Boysen,* 39 F.2d 800, 819 (10th Cir.), *cert. denied,* 282 U.S. 869, 51 S.Ct. 75, 75 L.Ed. 768 (1930); *Tennessee Coal, Iron & Railroad Co. v. Hartline,* 244 Ala. 116, 123, 11 So.2d 833, 839 (1943); *City of Phoenix v. Harlan,* 75 Ariz. 290, 293–94, 255 P.2d 609, 612–613 (1953); *Reinhard v. Lawrence Warehouse Co.,* 41 Cal.App.2d 741, 745–748, 107 P.2d 501, 504–505 (1940); *Ahern v. Steele,* 115 N.Y. 203, 213, 22 N.E. 193, 196 (1889); RESTATEMENT (SECOND) OF TORTS § 839 (1979).

■ In this case there is not any evidence, or even any allegation, that the District created the nuisance by improperly designing or constructing the alley in 1925. Appellee's claims are based solely on the

---

7. The court mischaracterized the condition of the alley as a public nuisance, when actually it was a private nuisance. *Compare* RESTATEMENT (SECOND) OF TORTS § 821B (1979) *with id.* § 821D. On the facts of this case, however, the error was harmless.

District's alleged failure to maintain the alley properly after being put on notice of its defective condition. In this regard, the trial court's findings are somewhat confusing. It found in part that "the construction of this alley in such a fashion that it abutted the garage, without any space in between, and the failure to maintain the alley in a reasonably safe ... condition ... did cause damage to the plaintiff's property" and constituted a nuisance. In so ruling, the court could only have been referring to the fact that in recent years the existing construction of the alley amounted to a nuisance. It made no finding, and indeed it could not have, that the District was negligent when it built the alley in 1925. Having no evidence before it regarding the state of the art of alley building in 1925 or the weight of the cars that might then be expected to pass through the alley, the court could not have found the original design and construction to be negligent.

Thus the District, if it is liable at all, can be liable only for that damage which occurred after it was given notice of the defect in the alley. *See* RESTATEMENT (SECOND) OF TORTS §§ 838–839 (1979); 58 AM. JUR.2D *Nuisances* § 57 (1971). *See generally Trent v. City of New York,* 286 App. Div. 479, 144 N.Y.S.2d 625 (1955). Without any evidence to the contrary, we must presume that the alley was properly constructed in 1925 and that, at worst, it may have fallen into disrepair thereafter.

 It is the law in this jurisdiction that a party may not succeed in a negligence claim against the District of Columbia for injuries sustained as a result of defective conditions in its streets or highways unless the party demonstrates that the District had actual or constructive knowledge of the dangerous condition bringing about the injury. *District of Columbia v. Woodbury,* 136 U.S. 450, 463, 10 S.Ct. 990, 34 L.Ed. 472 (1890); *District of Columbia v. Megginson,* 250 A.2d 571, 572 n. 2 (D.C.1969); *Harding v. District of Columbia,* 178 A.2d 920, 921 (D.C.1962); *Jones v. District of Columbia,* 123 A.2d 364, 366 (D.C.1956); *Mitchell v. District of Columbia,* 120 U.S. App. D.C. 390, 391, 347 F.2d 484, 485 (1965); *Aben v. District of Columbia,* 95 U.S. App. D.C. 237, 238, 221 F.2d 110, 111 (1955); *see also Miller v. District of Columbia,* 343 A.2d 278, 280 (D.C.1975); *cf. District of Columbia v. North Washington Neighbors, Inc.,* 367 A.2d 143, 148 (D.C.1976), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). That the District's liability for maintaining a nuisance which it did not create is also predicated upon notice is not surprising, given the close relationship between the law of nuisance and the law governing various types of tortious conduct:

> [N]uisance is a field of tort liability, rather than a type of tortious conduct....
>
> ... [L]iability for nuisance may rest upon intentional invasion of the plaintiff's interests, or a negligent one, or conduct which is abnormal and out of place in its surroundings, and so falls fairly within the principle of strict liability. *With very rare exceptions, there is no liability unless the case can be fitted into one of these familiar categories.*
>
> ... Nuisance, in short, is not a separate tort in itself, subject to rules of its own.

W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 87, at 573–574, 577 (4th ed. 1971) (footnote omitted; emphasis added).[8]

**8.** *Accord, DuFour v. Henry J. Kaiser Co.,* 215 Cal. App.2d 26, 28–30, 29 Cal. Rptr. 871, 873–874 (1963); *Foss v. Maine Turnpike Authority,* 309 A.2d 339, 342 (Me.1973); *Copart Industries, Inc. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 569, 362 N.E.2d 968, 971, 394 N.Y.S.2d 169, 172 (1977); *see Wright v. Masonite Corp.,* 237 F.Supp. 129, 138–139 (M.D.N.C.1965), *aff'd,* 368 F.2d 661 (4th Cir.1966), *cert. denied,* 386 U.S. 934, 87 S.Ct. 957, 17 L.Ed.2d 806 (1967); *Yommer v. McKenzie,* 255 Md. 220, 257 A.2d 138 (1969); *Commonwealth v. Barnes & Tucker Co.,* 23 Pa. Commw. 496, 353 A.2d 471 (1976), *aff'd,* 472 Pa. 115, 371 A.2d 461 (1977).

Some courts have also held that a cause of action for nuisance may be based upon reckless conduct. *E.g., Copart Industries, Inc. v. Consolidated Edison Co., supra* (New York); *Wright v. Masonite Corp., supra* (construing North Carolina law); *see also* RESTATEMENT (SECOND) OF TORTS

Notice of a dangerous condition imposes upon the District an obligation to repair it and thereby eliminate the danger.[9] *District of Columbia v. Woodbury, supra; Hackett v. District of Columbia,* 264 A.2d 298, 299 (D.C.1970); *Jones v. District of Columbia, supra,* 123 A.2d at 366. We think it makes sense to follow the same rule in nuisance cases like this one, since, as we have noted, actual or constructive notice of the nuisance is a prerequisite to liability when the nuisance was not created by the landowner.[10] Thus we hold that notice of the existence of a nuisance imposes on the landowner a duty to abate it. Accordingly, the District's liability in this case must depend in part on whether it received actual or constructive notice of the nuisance which the trial court found to exist. If the District was not notified, it cannot be held liable. If, on the other hand, the District was notified, it may be held liable, but only for those damages that accrued after it had notice and an opportunity to abate the nuisance by making repairs. In its findings of fact, the trial court determined that the District received actual notice of the nuisance sometime between October 10, 1978, and April 10, 1979.

See note 5, *supra.* We accept this finding, since it has support in the evidence and is not plainly wrong. *See* D.C.Code § 17–305 (1981).

But the mere existence of a nuisance and the finding that the District had notice of it are not sufficient to impose liability on the District. The evidence must show, in addition, that the District was guilty of some sort of tortious conduct—in this case, negligence, since none of the other types of tortious conduct identified by Prosser are apparent from the evidence, nor is there any reason to conclude that this case presents one of the "very rare exceptions" noted by Prosser.[11] Thus we must address the inconsistency presented by the trial court's finding of liability on the nuisance claim even though it granted the District's motion to dismiss the negligence claim.[12]

We hold that the trial court's ruling on the motion was erroneous. The evidence established all the elements of negligence; more importantly, the trial court's findings encompassed all those elements.[13] Thus the court erred in dismiss-

§ 822 (1979). No matter what the precise underlying legal theory may be, however, it is clear that some "tortious conduct" such as negligence is a necessary component of virtually all nuisance claims.

9. This type of notice is distinct from the notice required by D.C.Code § 12–309, *supra* note 1, which appears in the Limitation of Actions chapter of Title 12 of the Code and is "intended solely to assure the District the opportunity for timely access to all relevant facts about a potential claim, in order to protect the District against an unfair advantage by the eventual claimant." *Washington v. District of Columbia,* 429 A.2d 1362, 1368 (D.C.1981) (en banc).

10. We emphasize that there was no evidence in this case that the District created the nuisance when it built the alley in 1925. Thus we do not decide whether notice is required when the landowner is the one who created the nuisance in the first place, rather than the one whose negligence allowed it to develop.

11. The evidence does not suggest that the District intentionally invaded the Fowlers' interests. *See Wright v. Masonite Corp., supra* note 8, 327

F.Supp. at 138; RESTATEMENT (SECOND) OF TORTS § 825 comment c (1979). Nor is there any evidence of reckless conduct by the District. *See* RESTATEMENT (SECOND) OF TORTS § 500 (1965). The District cannot be held strictly liable for its failure to maintain the alley properly. *See* RESTATEMENT (SECOND) OF TORTS §§ 519, 520 & comment f (1977), 822(b), 822 comment j (1979), appendix to comment j (1982).

12. The District's motion to dismiss, made at the close of the plaintiff's evidence in this non-jury case, is properly characterized as one for involuntary dismissal under Super.Ct.Civ.R. 41(b). *See Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050, 1054–1055 (D.C.1980); *Marshall v. District of Columbia,* 391 A.2d 1374, 1379–1380 (D.C.1978).

13. The elements of a negligence action are (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care; (2) a breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the defendant's breach. *See, e.g., Morrison v. Mac-Namara,* 407 A.2d 555, 560 (D.C.1979); W. PROSSER, *supra,* § 30.

ing the negligence count. But because the court found the District liable on the nuisance count, and because that finding necessarily included a finding that the District was negligent in failing to abate the nuisance, the error was harmless.

### III

■ Although we affirm the trial court's finding of liability, we cannot accept its determination of damages. The trial court itself recognized more than once that the District could be held liable only for damages that arose after it had notice of the nuisance. However, neither the court nor Mr. Gilford, the expert witness on whose testimony the award of damages was based, made any apportionment which would support a conclusion that the damages awarded to Mrs. Fowler accrued after the District was put on notice rather than before.[14] Nor does the court's deduction of $20,000 in damages with the explanation that they accrued prior to notification have adequate evidentiary support. From the evidence one might even conclude that all the damages accrued before the District had notice of the condition of the alley, but one might also conclude otherwise. It is the duty of the fact-finder to determine what damages, if any, accrued after notice was given. Because the trial court failed to make that determination properly, this case must be remanded. We express no opinion on the correct amount of the award, if one is warranted.

■ The District urges us to reverse the judgment and direct the entry of judgment in its favor. We decline to do so, however, because the record does not compel the conclusion that the District is entitled to judgment as a matter of law. If a plaintiff obtains a judgment without fully proving his or her case and the defendant appeals on that ground, we will usually reverse the judgment and order the entry of a directed verdict for the defendant or, in a non-jury case, an involuntary dismissal under Super.Ct.Civ.R. 41(b). *E.g., Meek v. Shepard,* 484 A.2d 579, 582 (D.C.1984). In this case, however, appellee met her evidentiary burden by proving that she had suffered damages as a result of the District's conduct, and by proving the total amount of those damages. *See Manes v. Dowling,* 375 A.2d 221, 224 (D.C.1977); *W.G. Cornell Co. v. Ceramic Coating Co.,* 200 U.S.App.D.C. 126, 130, 626 F.2d 990, 994 (1980). Thus it would be improper for us to deny her any recovery simply because the trial court erred in ruling on the measure of damages.[15] Instead, we order a remand for further proceedings, since "the record does not enable [us] to determine the rights of the parties." *Pyramid National Van Lines, Inc. v. Goetze,* 66 A.2d 693, 694 (D.C.1949) (citation omitted); *see Biggs v. Stewart,* 361 A.2d 159, 164 (D.C. 1976); *Price v. Daime,* 71 A.2d 608, 609 (D.C.1950); *Fleming v. FCC,* 96 U.S.App. D.C. 223, 226, 225 F.2d 523, 526 (1955).

If this case had been tried to a jury, we would order a new trial on the issue of

---

**14.** The evidence would support a finding that the District was put on notice of the nuisance in October 1978; see note 5, *supra.* In July 1979, when Mr. Butler inspected the property, the alley had not been properly repaired. At some point the District cut the alley slabs abutting the garage and applied tar to the cracks. If this was done before Mr. Thane performed his vibration tests in October 1979, then his testimony would support a finding that the District had not abated the nuisance at that time. In any event, Mr. Gilford's testimony as to the cost of repairing the house and garage did not specify what portion of that cost was attributable to damages sustained before the District was put on notice of the nuisance.

**15.** *See Gyerman v. United States Lines Co.,* 7 Cal.3d 488, 505, 498 P.2d 1043, 1054, 102 Cal. Rptr. 795, 806 (1972); *Waterbury Petroleum Products, Inc. v. Canaan Oil & Fuel Co.,* 193 Conn. 208, 209, 477 A.2d 988, 999 (1984); *Manniello v. Dea,* 92 A.D.2d 426, 429, 461 N.Y.S.2d 582, 585 (1983); *Martin v. Johns-Manville Corp.,* 322 Pa. Super. 348, 358, 469 A.2d 655, 660 (1983); *Hilder v. St. Peter,* 144 Vt. 150, 164, 478 A.2d 202, 211 (1984); *see also Carlotto Ltd. v. County of Ventura,* 47 Cal.App.3d 931, 938–940, 121 Cal. Rptr. 171, 176–177 (1975); *Tullis v. Teial,* 182 N.J. Super. 553, 560, 442 A.2d 1039, 1043 (1982); *Granite Lake Realty Corp. v. Cullum,* 51 A.D.2d 761, 379 N.Y.S.2d 508, 509 (1976).

damages, as we did in *District of Columbia v. Cooper*, 483 A.2d 317 (D.C.1984). Since it was tried without a jury, however, we shall simply remand it for a *de novo* determination of the damages, if any, to be awarded. The trial court may make that determination on the record as it now exists, or it may, in its discretion, receive additional evidence.

The judgment is affirmed insofar as it establishes the liability of the District of Columbia for negligently failing to abate a nuisance after receiving notice of its existence. The award of damages is reversed, and this case is remanded to the trial court for further proceedings in accordance with this opinion.

*Affirmed in part, reversed in part, and remanded.*