**Jack MASSENGALE, Trustee, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**No. CIV. A. 96–02019(PJA).**

United States District Court,
District of Columbia.

Nov. 19, 1997.

Jack Massengale, pro se.

Jack Simmons, Washington, DC, for Defendant.

### MEMORANDUM OPINION

ATTRIDGE, United States Magistrate Judge.

The plaintiff, Jack Massengale, Trustee (Massengale), filed suit against the Washington Metropolitan Area Transit Authority (WMATA), the Mayor and City Counsel for the District of Columbia and John Doe in the Superior Court for the District of Columbia for damages to his property arising out of the construction of the Metro Green Line—Petworth Station. The action was removed to the U.S. District Court by the Transit Authority pursuant to D.C.CODE § 1–2439 (1981 Ed., 1992 Repl.Vol.). The parties consented to proceed before a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c)(3). Thereafter, the Mayor and City Council were dismissed from these proceedings as was the District of Columbia which had been joined as a defendant in the second amended complaint. The case came on for a bench trial solely against WMATA. For the reasons stated, the Court finds in favor of the defendant, WMATA, and against the plaintiff, Massengale.

### Findings of Fact

In the fall of 1994, WMATA, began construction of the Metro Green Line—Petworth Station in the area of Georgia and New Hampshire Avenues, N.W., Washington, D.C. (T. 102). The construction area was enclosed by an eight-foot chain-link fence (T. 161, 165). 3801 New Hampshire Avenue N.W., owned by Massengale (Pl's exh. 4), is a corner property located at the intersection of New Hampshire Avenue, and 8th and Quincy Streets, N.W. (T. 159), adjacent to the construction area and immediately outside the perimeter fence.

For the 13 years that Massengale has owned the property (T. 47) and for a number of years before his ownership, the property has been vacant (T. 90) and in a deteriorating condition (T. 23, 102, 105, 129).

Sometime during the latter part of 1994 or early 1995, someone removed a plywood barrier (T. 51) and steel gate (T. 76) from the door opening and began to store machine bolts (Pl's exh. 1, T. 30, 63) in the interior of the premises as well as steel rods and plastic pipe against the exterior of the building (T. 63, 64). This construction material was similar in appearance to materials used in the Metro construction (T. 17, 24, 36).

When Massengale observed the storage of construction equipment on his property, he informed individuals, whom he described at one point as a construction foreman (T. 51, 52) and at another as a Metro foreman (T. 83), that he did not object to this use of his property as long as any damage caused was repaired and the premises were kept clean of trash (T. 52, 83).

Massengale now complains that the collapse of the roof of the building (T. 64) and the removal of a portion of a retaining wall (T. 64) arose out of Metro's use of his property and that it has failed to make repairs. Neither the roof nor the retaining wall have been replaced nor repaired. Massengale offered no evidence of the costs of these repairs. He seeks $800 a month for one year (T. 52) as reasonable rent for the use of his property (T. 53, 59).

WMATA asserts that no Metro construction material was ever stored outside the perimeter fencing and specifically on premises 3801 New Hampshire Avenue, N.W. (T. 166). WMATA's on-site resident engineer, the highest-ranking on-site Metro employee and the owner's representative for this project, never saw any construction materials stored on premises 3801 (T. 160), nor was the storage of construction material outside the perimeter fence ever authorized by him (T. 161, 166–168). The resident engineer did see non-Metro related construction on-going in the vicinity of 3801 being performed by utility companies such as Washington Gas Light (T. 199). This construction involved the use of a backhoe (T. 202, 221–222). Massengale

and the resident of premises 3805 saw a bulldozer on or near 3801. Of significance, a survey plot of the construction area (Def's exh. 7) disclosed that a temporary gas line was to be installed in the vicinity of the retaining wall of premises 3801 of the construction area (T. 222). And, of further significance was the fact that the Metro contract drawings did not provide for the removal of any retaining wall at 3801 (T. 223). Also of note, as recently as October 1997, construction equipment was on or near the plaintiff's property in connection with the servicing of a water line or meter (T. 240), an activity not directly related to the Metro construction.

I conclude, as a matter of fact, that the retaining wall was not removed by WMATA. It was outside the perimeter fence and was not required to be removed because of the subway construction.

I further find that the plaintiff failed to prove that the collapse of the roof of 3801 was caused by Metro construction activity. The wooden cross members of the roof evidenced dry rot (T. 236) and the masonry pockets on which these cross members rested were wholly intact at the time of a recent investigation by a WMATA-retained engineer (T. 232, 233, 236). In light of the prior testimony of a neighbor who resided at 3805 New Hampshire, N.W., that the roof collapsed following a heavy snow storm on January 13, 1995, the Court finds credible the testimony of the defendant's structural engineer expert witness that the roof collapse was caused by the weight of the snow on the rotted cross members (T. 235). No other damage to the premises is attributed to Metro construction by the plaintiff other than the removal of a plywood entrance cover and iron gate. The Court finds no evidence from which it could conclude that WMATA personnel acting within the scope of their employment removed the plywood and iron gate.

This brings us to a consideration of the plaintiff's claims of nuisance, unauthorized use of his property and negligent excavation.

*Conclusions of Law*

Massengale's theories of liability are somewhat difficult to understand. As ascertained from his Second Amended Complaint, he seeks damages in the sum of $9600.00 ($800.00 a month for 12 months) for the unauthorized use of his property when Metro, without his consent, permission or authority, stored "building material, pipes, tool boxes and other equipment used in the construction of a metro train subway" (Count One).

Massengale also contends in a count entitled "nuisance" that WMATA unreasonably interfered with his use and access to his property and that the unauthorized use caused a weakening of the building which led to the collapse of the roof. He seeks $2000.00 for roof repairs. But as stated earlier, Massengale offered no evidence regarding the cost of repairs. This count also alleges that because of the roof collapse and the accumulation of trash which he attributed to the Metro construction,[1] the District of Columbia repeatedly cited him for violations of the District of Columbia regulations.[2] He asserts that in order to abate these violation notices, WMATA agreed to tear down his building but that it now refuses to do so (Count Two). However, he does not seek any specific relief for breach of this alleged oral contract.

Lastly, in a count entitled "Damage Due to Excavation," Massengale alleges that WMATA "negligently engaged in excavation work which caused considerable shaking of (his) property" and that he was damaged in an undisclosed sum by "shaking vibrations" (Count Three).

In preparation for a final pretrial conference and in accordance with our local rules, Massengale filed a pretrial statement in which he set out his claims as follows:

A. Plaintiff's contention:
Plaintiff claims that without authority, permission or consent of plaintiff, defendant or his agents entered and used plaintiff's premises for storage of his equipment and

---

1. Massengale also seemed to attribute the dumping of trash on his property to his neighbor (T. 114.)

2. Massengale does not identify the regulations.

materials used in construction of Metro Green Line. Plaintiff offered defendant opportunity to abate the nuisance he suffered as a result of defendant's conduct by demolition of his building. Defendant accepted the offer and promised to tear down the building and to level the premises. Defendant failed to honor its promise. Plaintiff also claims damages caused to his property as a result of defendant's excavation work, for the construction of Metro Green Line, in close proximity to plaintiff's property.

B. Plaintiff's prayer:

Plaintiff claims $9,600 rent for the period defendant used his premises, $2000 for the cost of replacement of a damaged roof of the property damages for nuisance and other relief the court may deem just and appropriate.[3]

Massengale's claim for unauthorized use is in the nature of a claim for trespass. The tort of trespass in the District of Columbia is " 'an invasion of the interest in the exclusive possession of land.' " *Carrigan v. Purkhiser*, 466 A.2d 1243, 1243 (D.C.1983). On the other hand, " 'a *private nuisance* is a nontrespassory invasion of another's interest in the private use and enjoyment of land.' " *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 821D (1979), and citing W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 89, at 591 (4th ed.1971), and *B & W Management Inc. v. Tasea Investment Co.*, 451 A.2d 879, 882 (D.C.1982)).

Since Massengale complains of a physical invasion of his property by materials being placed in and against the premises of 3801 New Hampshire Avenue, N.W., his claim, if any, is properly one for trespass and not nuisance.[4] Therefore, his claim of nuisance shall be dismissed since the evidence does not support such a claim.

In order to recover on a claim of trespass, it is incumbent on the plaintiff to prove by a preponderance of the evidence

that the defendant was the trespasser. Upon consideration of all the evidence, the Court is not satisfied that the plaintiff has proved by a preponderance of the evidence that WMATA committed any trespass on his land. To the contrary, Massengale testified that he consented to the storage as long as any damage that may result is repaired (T. 52, 83). The plaintiff puts great emphasis on the fact that a machine bolt (Pl's exh. 1) that he recovered from inside 3801 bore the letter "m". But this "m," or "w", as it appears to the Court, was not WMATA's logo. Moreover, WMATA's resident engineer testified that WMATA did not fabricate any material used in the Petworth Station construction. The exhibit was nothing other than a machine bolt used in everyday construction. Nor were the steel rods or plastic pipe, which he saw resting against his premises, unique to Metro construction. Steel rods of the type described by Massengale are used wherever reinforced concrete is required. Moreover, plastic pipe is commonly used in this day and age in all types of residential and commercial construction.

This phase of Metro construction was in an entirely urban area consisting of single family residences and small shops. In order to protect the public from dangers associated with the construction, the construction area was enclosed by an eight-foot chain-link fence. This fencing extended for many blocks (Def's exh. 8). Massengale's property was outside this perimeter fencing and on the extreme edge of the Petworth Station construction. Metro's resident-engineer testified that no Metro construction material was stored outside the perimeter fence, and none of the subcontractors was authorized to store materials off-site in the area of this construction, and more specifically, none was authorized to store any materials at 3801 New Hampshire Avenue, N.W. Furthermore, this witness identified non-Metro construc-

---

**3.** Although the plaintiff refers to an agreement with WMATA to demolish his premises, his pretrial statement only claims damages of $9600 for unauthorized use, $2000 for the roof replacement, unspecified damages for maintaining a nuisance and other relief the Court may deem appropriate.

**4.** "In some instances, of course, a person's conduct may give rise to both a claim of trespass and a claim of nuisance. RESTATEMENT, *supra*, § 821D, comment e; W. PROSSER, *supra* at 595." *Carrigan*, 466 A.2d. at 1244, fn. 2. However, this is not such a case.

 

tion that was on-going in the vicinity of Massengale's property at or about the time of Massengale complains his property was damaged. I find this testimony credible. Accordingly, I conclude that Massengale has failed to satisfy his evidentiary burden of showing that WMATA trespassed upon his property. Moreover, even if the Court were to speculate that Metro subcontractors did, indeed, store materials on Massengale's property such storage was not approved by Metro and was therefore unauthorized. Furthermore, Massengale consented to the use of his property to store materials thereby vitiating a later claim for unauthorized use.

■ Lastly, Massengale claims that WMATA negligently engaged in excavation work which caused considerable shaking to his property and consequential damage.

■ This claim must also fail for there is no evidence that WMATA engaged in any negligent construction. In order to establish a claim for negligence, it is incumbent upon a plaintiff to prove: (1) a duty, owed by the defendant to the plaintiff, to conform to a certain standard of care, and (2) a breach of this duty by the defendant, (3) which proximately caused injury to the plaintiff.[5] The plaintiff produced no evidence of the standard of care to be exercised by one engaged in the construction of a subway line. Nor did he prove that a breach by the defendant of the applicable standard caused him damage. His sole contention is that he felt a vibration while standing on his property which he attributed to WMATA's pounding of reinforcing rods into the ground. Massengale never proffered himself as an expert in construction. His opinion as to the causal relationship between the pounding he experienced and the collapse of the roof of his building carries no evidentiary weight. In fact, the only expert witness to testify attributed the roof collapse to the weight of snow on a rotted roof (T. 235, 236). In addition, the expert concluded that none of the damage disclosed in the photographic evidence was attributed to Metro construction. Based on this testimony as well as the weight of all the other evidence produced, I concur.

Accordingly, judgment shall be entered in favor of defendant Washington Metropolitan Area Transit Authority. An appropriate order accompanies this opinion.

---

**5.** *District of Columbia v. Fowler,* 497 A.2d 456, 463 fn. 13 (D.C.1985) (citing *Morrison v. MacNa-* mara, 407 A.2d 555, 560 (D.C.1979) and W. PROSSER, *supra* § 30).