Filed 10/7/13  CLP Resources v. WCAB (Mora) CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CLP RESOURCES, INC.,<br><br>          Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and JORGE MORA,<br><br>          Respondents. | A138439<br><br>(WCAB Case No. ADJ6781238) |

Respondent Jorge Mora was injured in a workplace accident while operating a patently unsafe table saw.  He had been dispensed to the jobsite by his temporary placement agency employer, petitioner CLP Resources, Inc. (CLP), and was working under the direction of John Lieb.  Following the accident, Mora filed an application for an award under Labor Code section 4553, which grants additional benefits to a worker who is injured by the "serious and willful misconduct" of his employer.  The workers' compensation administrative law judge (WCJ) found CLP committed such misconduct when it failed to inspect Lieb's jobsite and detect the dangerous table saw, and respondent Workers' Compensation Appeals Board (Appeals Board) affirmed the decision on this ground.  Finding no substantial evidence of knowingly wrongful conduct on the part of CLP, we annul the award.

## I.  BACKGROUND

Mora filed an application for workers' compensation benefits due to the serious and willful misconduct of CLP and Lieb on December 8, 2009 (application).  The

application alleged he was working as a carpenter for both employers, under the supervision of Lieb, when Lieb directed him to use a table saw unsecured to a base and lacking a protective guard. Mora sustained serious cuts to his left hand. Mora's first theory alleged the injury was due to the willful failure of both employers to provide a safe place of work. His second theory alleged Lieb had knowingly violated a safety order in directing this work. Although joined in the application, Lieb was not properly served and did not participate in the proceeding.

At trial on the application, Mora testified he had 13 to 15 years' work experience as a carpenter.[1] He began work for CLP, a temporary placement agency, in April 2008, and had been assigned to several different jobsites prior to his accident. At the jobsite on which he was injured, Mora was supervised by Lieb, who provided his tools and told him what to do. Mora was injured on December 9, 2008, while cutting wood on a table saw provided by Lieb that was both unsteady and lacked a guard over the blade. He stepped on debris, lost his balance, and placed his hand on the unguarded table saw blade.

CLP had instructed Mora to contact Marlo Vasquez, a CLP employee, if "there was a problem, or if anything was not right," such as "dangerous conditions." After his second week of working at the Lieb jobsite, Mora "saw things that were not right," noting in particular an open trench and a ladder not attached to the frame. In the third week, Mora went to CLP's office to discuss with Vasquez his concerns about safety at the Lieb jobsite. On direct examination, Mora testified he told Vasquez "there were a lot of things that were not right on the job site where he was working" and Vasquez "should check it out." As Mora was about to list the specific safety problems, however, Vasquez told him "there was no work, and he should just be careful." After that, Vasquez turned back to his computer and gave Mora no opportunity to provide more information. No one from CLP came to inspect the site.

---

[1] This account is taken from the "Minutes of Hearing/Summary of Evidence" prepared in connection with the Labor Code section 4553 hearing. The appellate record does not appear to contain a transcript of the hearing.

2

On cross-examination, Mora acknowledged he had testified at his deposition he had not told anyone at CLP that there were dangerous conditions at the Lieb jobsite.[2] In explanation, Mora said he had tried to tell Vasquez that day, but he was ignored. Mora acknowledged he had not told anyone at CLP specifically about the unsecured, unguarded table saw, although he said it was one of the safety problems he intended to discuss with Vasquez.

The only CLP employee to testify was a company safety official. He said CLP inspects the work sites of the contractors to whom its employees are assigned and had inspected the Lieb jobsite in October 2008, about two months prior to Mora's injury. In the inspection, CLP had found no safety violations. If the unguarded table saw was present, it was not located by the inspector, although it had been "mentioned by the individuals who previously worked on the job site." The employee speculated the inspector might have missed the table saw because Lieb removed his tools from the site each day to prevent theft.

Following the accident, the California Occupational Safety and Health Administration (Cal-OSHA) had investigated. CLP was cited for having an inadequate injury and illness prevention program and for the hazardous state of the table saw. Cal-OSHA ultimately reduced the proposed penalty against CLP, possibly after concluding that CLP was unaware of the hazardous nature of the saw.

The WCJ found that Mora's injury was proximately caused by the willful and serious misconduct of CLP and awarded appropriate damages under Labor Code section 4553. In explaining her decision, the WCJ found the use of an unguarded table saw to be "an inherently dangerous proposition" likely to cause serious injury and noted Cal-OSHA had cited both CLP and Lieb for use of the unsafe saw. Although she found "no clear evidence that management representatives at CLP . . . knowingly violated the

_____

[2] A transcript of Mora's deposition was marked for identification and used at the hearing. When asked at the deposition whether he "ever inform[ed] anyone at CLP Resources that you personally felt something was dangerous about your work" for Lieb, Mora answered, "No."

3

safety order" and "no[] evidence that a CLP managing representative 'turned his mind' to the dangerous situation here," she noted Lieb was aware of the problem. The WCJ, who viewed the testimony regarding CLP's inspection of the jobsite to be of "questionable" reliability, concluded CLP "failed to adequately inspect the jobsite."

CLP petitioned for reconsideration of the order, arguing there was no evidence any of its supervisory or managing agents had engaged in willful or serious misconduct, as required by Labor Code section 4553.

In her report and recommendation to the Appeals Board, rendered in response to CLP's petition, the WCJ again acknowledged "there is no clear evidence that any named management representative" of CLP "knowingly violated a safety order" or " 'turned his mind' to the dangerous situation of an unguarded table saw." She concluded, however, that CLP "failed in its duty to adequately inspect the jobsite. It is so obvious that this unguarded saw created a probability of serious injury that failure to inspect and correct the condition is believed to constitute a reckless disregard for the probable consequences, i.e. the serious hand injury sustained by the injured worker." The Appeals Board affirmed the decision for the reasons stated by the WCJ in her report and recommendation.

CLP applied to this court for a writ of review of the Appeals Board's decision. (Lab. Code, § 5950.)

## II. DISCUSSION

CLP contends there was no substantial evidence that its supervisory or managing personnel committed willful and serious misconduct in connection with Mora's injury. In his answer to the petition, Mora raises no specific legal arguments, instead purporting to adopt the WCJ's decision and rely on the rationale articulated in her decision.

" 'Our review of an award by the Workers' Compensation Appeals Board is confined to the determination whether, under applicable principles of law, the award is supported by substantial evidence. [Citations.] . . . [I]f the board's findings " 'are supported by inferences which may fairly be drawn from evidence even though the evidence is susceptible of opposing inferences, the reviewing court will not disturb the

4

award.' " ' " (*Western Electric Co. v. Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 629, 643–644.)

Under Labor Code section 4553, the benefits awarded to an employee may be increased by one-half if the employee has been injured "by reason of the serious and willful misconduct" of the worker's employer. If the employer is a corporation, the misconduct must be "on the part of an executive, managing officer, or general superintendent" of the corporation. (*Ibid.*) Unlike normal workers' compensation benefits, which automatically follow from an injury, "the additional award based on serious and wilful misconduct of the employer is . . . actually of the nature of a penalty, which is imposed . . . only upon proof of the aggravated criminal or quasi-criminal behavior which constitutes serious and wilful misconduct, and against which the employer cannot purchase insurance." (*Lambreton v. Industrial Acc. Com.* (1956) 46 Cal.2d 498, 504, fn. omitted.)

In *Bigge Crane & Rigging Co. v. Workers' Comp. Appeals Bd.* (2010) 188 Cal.App.4th 1330 (*Bigge Crane*), this court reviewed the law governing serious and willful misconduct under Labor Code section 4553, relying largely on the landmark decision *Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102 (*Mercer-Fraser*), disapproved on other grounds in *Le Vesque v. Workers' Comp. Appeals Bd.* (1970) 1 Cal.3d 627, 636–637 and footnote 14: " ' "Wilful misconduct . . . necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom.*" ' [Citation.] . . . [¶] . . . ' "The term 'serious and wilful misconduct' is described . . . as being something 'much more than mere negligence, or even gross or culpable negligence' and as involving 'conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences[.]' . . . The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent

5

of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. . . .” ’ [Citation.] [¶] ‘ “. . . Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.” ’ ” (*Bigge Crane*, at pp. 1349–1350.)

Under *Mercer-Fraser* and subsequent decisions, the inadequate inspection cited by the WCJ and the Appeals Board as misconduct could not have constituted the type of intentional conduct required for liability under Labor Code section 4553, unless a managing agent at CLP was aware of the actual risks presented by the inadequate inspection. As the Supreme Court held in a case decided with *Mercer-Fraser,* “[a] ‘reckless disregard’ of the safety of employees . . . . must be an affirmative and knowing disregard of the consequences. Likewise, a finding that the ‘employer . . . should have known had he put his mind to it’ does not constitute a finding that the employer had that degree of knowledge of the consequences of his act that would make his conduct wilful. The standard requires an act or omission to which the employer *has* ‘put his mind.’ ” (*Hawaiian Pineapple Co. v. Ind. Acc. Com.* (1953) 40 Cal.2d 656, 663.) Similarly, “a finding that [an employer] is guilty of wilful misconduct [must] be based on evidence that he deliberately failed to act for the safety of his employees, knowing that his failure would probably result in injury to them.” (*Rogers Materials Co. v. Ind. Acc. Com.* (1965) 63 Cal.2d 717, 721–722, disapproved on other grounds in *Le Vesque v. Workers’ Comp. Appeals Bd.*, *supra*, 1 Cal.3d 627, 636–637 & fn. 12; see also *Johns-Manville Sales Corp. v. Workers’ Comp. Appeals Bd.* (1979) 96 Cal.App.3d 923, 933 [“an employer guilty of serious and willful misconduct must know of the dangerous condition, know that the probable consequences of its continuance will involve serious injury to an employee, and deliberately fail to take corrective action”]; *Abron v. Workers’ Comp. Appeals Bd.* (1973) 34 Cal.App.3d 232, 238 [“An employer must know the probable consequences of his failure to provide more adequate safety devices or a safer place to work. He must have put his mind to the existence of a danger to an employee and have failed to take

6

precautions to avert that danger."].)  The WCJ found, in effect, that Mora failed to prove this element of serious and willful misconduct when she noted there was "no[] evidence that a CLP managing representative 'turned his mind' to the dangerous situation here." In the absence of such evidence, the Appeals Board's finding of serious and willful misconduct cannot be upheld.[3]

Searching the record, we find two potential means for attributing knowledge of the dangerous conditions to CLP, but, in the end, neither of them provides substantial evidence to support such a finding.  First, Mora testified he told Vasquez "there were a lot of things that were not right on the job site where he was working."  Even if we accept this testimony and disregard Mora's contrary deposition testimony that he had never told anyone at CLP about the dangerous conditions, his statement is insufficiently detailed to demonstrate CLP had knowledge of particular circumstances likely to cause serious injury.  As Mora testified, Vasquez gave him the brush-off before Mora had an opportunity to read off the list of examples, thereby giving substance to his complaint.  At most, Vasquez knew Mora was concerned there were unsafe conditions at the site.  This is insufficient to attribute to Vasquez actual knowledge that serious injury was a probable result of his failure to follow up.

Second, the CLP safety employee testified, according to the summary of evidence, "[t]o his knowledge, the unguarded table saw was not observed by those who did the inspection prior to [Mora's] injury.  *It was mentioned by the individuals who previously worked on the job site*, but Mr. Lieb would remove his tools on a daily basis, due to high crime in the neighborhood."  (Italics added.)  This shred of testimony suggests CLP might have known, at a minimum, that Lieb was using the table saw on the jobsite.  If other employees had reported to CLP the dangerous conditions of the table saw, it might

---

[3] The WCJ's conclusion that "It is so obvious that this unguarded saw created a probability of serious injury that failure to inspect and correct the condition is believed to constitute a reckless disregard for the probable consequences," puts the cart before the horse.  CLP could not have known its failure to inspect created a risk of serious injury unless it knew there was an extraordinarily dangerous condition on the jobsite.  In the absence of such knowledge, CLP's failure was merely negligence, not recklessness.

have created a factual basis for a finding of serious and willful misconduct in the failure to follow up. It is not clear from the summary of evidence, however, who observed the table saw, when they "mentioned" it, who they told at CLP about the saw, and what they said about it. Mora's attorney appears not to have pursued the issue in cross-examination, and the record contains no further information about CLP's knowledge of the table saw.[4] As a result, this, too, is insufficient to permit a finding of actual knowledge that serious injury was probable. Because there was no substantial evidence that CLP performed an inadequate inspection *while knowing of the specific risk presented by the failure to inspect,* its failure was at most negligence and cannot support a finding of serious and willful misconduct.

Even if there was some evidence of a conscious disregard for safety, the claim of misconduct would fail because Mora presented no evidence of any act or omission by "an executive, managing officer, or general superintendent" of CLP, a prerequisite to the imposition of misconduct liability on a corporation under Labor Code section 4553. As we noted in *Bigge Crane,* " ' "[a]n executive or managing officer" is "a person in the corporation's employ, either elected or appointed, who is invested with the *general conduct and control* at a particular place of the business of a corporation." (Italics added.) [Citation.] A "managing agent or a managing representative is one who has *general discretionary powers of direction and control*—one who may direct, control, conduct or carry on his employer's business or any part or branch thereof." (Italics added.) [Citation.]' [Citation.] ' "While the terms of the . . . [statute] have been broadened with each amendment, the [L]egislature has refrained from making the employer liable for the misconduct of every person exercising authority on the employer's behalf. On the contrary, the class of persons whose misconduct will result in the imposition of such liability still remains limited." ' " (*Bigge Crane, supra*, 188 Cal.App.4th at pp. 1342–1343.)

---

[4] It is possible there was no follow up because the "mentions" came during the investigation of Mora's accident, rather than prior to the accident.

Testimony at the hearing mentioned only two CLP employees by name, Vasquez and Marcus Peterson. Peterson interviewed Mora for the job and introduced Mora to Vasquez. Vasquez was said to have been designated as Mora's contact person at CLP only because Vasquez spoke Spanish, not because he exercised any particular functions at CLP. There is no further information about either person's title, job duties, or responsibilities and prerogatives. In particular, there is no information about whether either exercised "general conduct and control" or significant discretionary authority at the local CLP office. While the testimony did mention that a person or persons from CLP inspected Lieb's jobsite in October 2008, no other information was given about these people. In the absence of such information, the WCJ had no basis for finding misconduct on the part of an appropriate corporate actor, as required by Labor Code section 4553.[5]

In her decision, the WCJ referred to, but did not rely on, an argument by Mora that CLP would be jointly and severally liable for any award based on misconduct by Lieb because it was a general employer of Mora. Because, as discussed below, joint and several liability does not adhere until a general employer has been found liable, the argument provides no basis for upholding the award against CLP.

When one employer "lends" an employee to another employer, the two employers become, respectively, a general and special employer. (*Marsh v. Tilley Steel Co.* (1980) 26 Cal.3d 486, 492.) In tort law, the designations are significant because, if the employers exercise joint control over the employee's activities, they are jointly and severally liable to third parties under the doctrine of respondeat superior for negligence of the employee. (*Societa per Anzioni de Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, 460.) When two or more defendants are held to be jointly and severally

_____

[5] The WCJ also discussed the violation of a safety order. Labor Code section 4553.1 establishes particular requirements when such a violation is alleged to be the basis for a finding of serious and willful misconduct, but it does not alter the standards of section 4553. (*Grason Elec. Co. v. Industrial Acc. Com.* (1965) 238 Cal.App.2d 46, 51.) Accordingly, any such violation would not present an independent basis for finding liability against CLP here.

9

liable for a judgment, each is liable to the plaintiff for the entire amount of the judgment. (*Dauenhauer v. Sullivan* (1963) 215 Cal.App.2d 231, 236.)

When the two employers exercise joint control over an employee, both are also jointly and severally liable to the employee under workers' compensation law for any award of workers' compensation benefits. (*County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 405.) Under the circumstances presented here, CLP and Lieb would be deemed to be exercising joint control, creating joint and several liability for ordinary workers' compensation benefits. (*Id.* at p. 406.)

Neither Mora nor the WCJ cited case law finding joint and several liability for awards under Labor Code section 4553 arising solely from an employer's status as a general employer, and we find no legal basis for imposing such liability. The principle of joint and several liability is not itself a means for establishing liability; rather, it is a means for apportioning responsibility for payment of a judgment once liability for the judgment has been established. Before joint and several liability arises, liability for the judgment must first be proven individually against each defendant. (*Orser v. George* (1967) 252 Cal.App.2d 660, 667.) The liability of general and special employers for an award of ordinary workers' compensation benefits arises merely from their status as employers. Joint and several liability for the award follows from that common liability to the employee. In contrast, liability for an award under Labor Code section 4553 arises only if the employee has proven his or her injury was caused by serious and willful misconduct. Under the statute, such misconduct must be proven individually with respect to each employer; there is nothing in section 4553 or workers' compensation law more generally to suggest a general employer is *vicariously* liable for the misconduct of a special employer. It is only after individual section 4553 liability has been established that the possibility of joint and several liability arises. Because Mora failed to demonstrate section 4553 liability against CLP, the possibility of joint and several liability for an award against Lieb never arose.

### III. DISPOSITION

The order awarding additional compensation is annulled.

10

_____
Margulies, Acting P.J.

We concur:


_____
Banke, J.


_____
Sepulveda, J.[*]

---